## DuFRESNE v. PAUL.

## Opinion delivered May 17, 1920.

1. INJUNCTION—TRESPASS.—A complaint in equity to enjoin trespasses on land which does not allege the insolvency of defendant, or that there would be a continuing trespass making necessary a multiplicity of suits to redress the injury at law, or facts showing an irreparable injury to the freehold, is insufficient to state a cause of action in equity; the remedy at law being complete and adequate.

2. INJUNCTION—TRESPASS NOT ENJOINED WHERE TITLE IN DISPUTE.— Whenever the plaintiff's title in cases of trespass is in dispute, equity will interfere by injunction on the ground of multiplicity of suits unless he has successfully established his title by trial at law.

3. INJUNCTION—JURISDICTION CONFERRED BY CROSS-BILL.—In an action to enjoin trespass where defendant prayed that his answer be taken as a cross-bill, that plaintiff's deed be canceled, and for damages for breach of the lease under which defendant claimed the right to possession, equity had jurisdiction to settle the rights of the parties, though the complaint failed to state a cause of action to have the trespass enjoined.

4. COURTS—WAIVER OF OBJECTION TO JURISDICTION.—In an action to enjoin trespass defendant waived objection to the court's jurisdiction where he filed a cross-bill asking for equitable relief and proceeded to final adjudication upon the issues thus joined.

5. LANDLORD AND TENANT—CONSPIRACY TO OUST TENANT.—Where a lease provided for its termination upon sale of the premises by the lessor, the latter, by making a pretended sale for the purpose of ousting the lessee, became liable to him for damages growing out of such a breach of the contract, including the illegal or wrongful issuance of a temporary restraining order.

6. LANDLORD AND TENANT — TERMINATION OF LEASE — DAMAGES.— Where a lease provided for its termination upon sale of the premises by the lessor, and the lessor made a *bona fide* sale to a third party and notified the lessee and offered to pay for his improvements in compliance with the lease, but the lessee refused to accept such offer and thereafter set up a claim to the land in controversy and was interfering with the lessor's grantee in his possession, the lessee was not entitled to possession nor to damages by reason of issuance of a temporary restraining order.

7. LANDLORD AND TENANT—OUSTER OF TENANT—BURDEN OF PROOF.— Where a lease provided for its termination upon sale of the premises to a third person, a purchaser of the premises in an action to enjoin trespass on the land by the lessee had the burden

merely of showing the sale; the burden being on the lessee to show that the sale was fraudulent where he relied upon that defense.

8. Fraud—circumstantial evidence.—While fraud may be established by circumstantial evidence, the circumstances must be so strong and well connected as to clearly show fraud.

9. Contracts—fraud—sufficiency of evidence.—Written instruments whose execution is clearly established can not be overturned by circumstances which lead merely to a suspicion of their execution for a fraudulent purpose.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Botts & O'Daniels,* for appellant.

1. The injunction was wrongfully issued, (1) because no affidavit was made to the complaint; (2) the allegations and proof show that no injunction should have been issued, and (3) the whole transaction shows fraudulent effort to cancel the DuFresne contract. Kirby's Digest, § 3969; 15 Ark. 264. The demurrer should have been sustained because the complaint did not state facts sufficient to constitute a cause of action and the complaint shows that plaintiff is not entitled to the relief sought. There is no allegation that DuFresne is insolvent, nor proof that he was, nor does plaintiff allege or show that there would be a multiplicity of suits. 119 Ark. 384; 22 L. R. A. 233; 75 Ark. 286; 92 *Id.* 118; 11 *Id.* 304.

2. The whole transaction on the part of Moody and Paul shows that the alleged transaction was fraudulent and was for the purpose of attempting to cancel DuFresne's lease contract. 73 Ark. 179; 133 *Id.* 260.

3. The Massey place was not sold. In equity fraud need not be shown by direct and positive proof, but here the evidence does show misrepresentations and concealments that are direct and positive, and besides this the circumstances prove but one purpose—that to deceive. 41 Ark. 378; 74 *Id.* 186.

4. Much of appellee's testimony was incompetent and should not be considered. 84 Ark. 420. If the in-

junction was wrongfully issued, as we contend *supra,*
then DuFresne was damaged in 1918 crop in the sum of
$11,616.76, and would be the same approximately for
1919. Appellee does not come into court with clean
hands.

*John W. Moncrief,* for appellee.

1. Appellant was not entitled to damages on the
proof made by him. 132 Ark. 599; 102 *Id.* 108-114.

2. The court had jurisdiction and the evidence sus-
tains the findings. 134 Ark. 254-261; 100 *Id.* 28-35; 136
*Id.* 578-582; 129 *Id.* 197; 79 *Id.* 499; 74 *Id.* 104; 105 *Id.*
559-575.

3. Under the terms of the contract between Moody
and DuFresne, Moody had the right to sell the property
involved in the suit. The contract is set out in full in
the transcript and he had the right to sell to Paul or
any other party. He gave DuFresne and his daughter
the first opportunity to purchase, although appellant had
violated his contract in many ways, as the evidence
shows. The rule as to burden of proof is stated prop-
erly in 20 Cyc. 108. See, also, 45 Ark. 492; 25 Atl. 558.
Fraud must be proved. 37 Ark. 145; 63 *Id.* 16-22; 11
*Id.* 378; 39 *Id.* 419. Every alleged, pretended or imag-
inary fraud on which appellant relied was explained away
and destroyed by appellant's own witnesses. All of Du-
Fresne's acts in reference to the timber were in viola-
tion of the contract. 24 Cyc. 1348; Jones on Landl. &
Ten., § 388. Under the contract held by DuFresne a
sale terminated the lease and the lessee was required to
vacate. Failure to fence the land with a good fence in
a certain time terminated the lease. That time had ex-
pired.

The evidence fully sustains the findings of the chan-
cellor and should not be disturbed. 101 Ark. 368-375;
91 *Id.* 69; 41 *Id.* 378.

*Gibson & Burnett* and *John W. Moncrief,* for appellee.

The burden of proof was on appellant and he has failed, and the court properly dismissed his cross-complaint. Appellee has paid the purchase money for this land; he has improved it and assumed obligations which would only be assumed by a *bona fide* purchaser, and he should not be deprived of his property. 88 Ark. 433.

Wood, J. John M. Moody lived in Philadelphia, Pa. On the 16th day of January, 1917, a contract was entered into by Moody with J. A. DuFresne, whereby the former leased to the latter a tract of land consisting of 240 acres known as the "Valentine place," in Arkansas County, Arkansas. The lease was for a consideration of $1 and certain covenants whereby the lessee undertook to improve and put the land in cultivation as a rice plantation.

The improvements specified included substantial fences of hog and barbed wire, a well costing not less than $1,800, an engine and boiler costing not less than $2,000, proper housing and sheds for the well and machinery and belting and fixtures necessary for their operation.

The lessor had the right to cancel the lease if the lessee failed within six months to perform his covenants with regard to the improvements. The lessee was to keep insurance on the rice plant thus installed, to keep same free from all incumbrances and to pay all taxes, water rents and assessments.

Among the specific covenants of the lease is the following: "X. It is mutually covenanted and agreed that the party of the first part may at any time during the operation of this lease sell all or any part of the property hereby leased, and that this lease shall thereupon terminate, and if this lease be so terminated before the expiration of five (5) years, then in that event the said party of the first part shall pay to the said party of the second part the sum which the said party of the second part may have expended in erecting or causing to be erected the

aforesaid plant with the fixtures and appurtenances thereto, less a sum which shall be computed on the basis of a rental at seven hundred and sixty dollars ($760) a year for such time as the said party of the second part shall have occupied said premises, provided second party shall have until December 31, following date of sale, in which to harvest his crop, if sale is made after second party has begun crop for that year."

There was also a provision that if the lessee breached any of his covenants the lessor had the right to take possession of the premises. There was a covenant on the part of the lessor that if the lessee performed the covenants on his part he should hold the premises for a period of five years.

John M. Moody also owned another tract of land in Arkansas County known as the "Massey place," consisting of 270 acres, adjoining the "Valentine place," which by letter he promised to lease in connection with the "Valentine place," but the "Massey place" was not included in the written lease.

DuFresne entered into possession through subtenants.

On November 30, 1917, John M. Moody and George P. Paul executed what purported to be a contract by which Moody agreed to sell, and Paul to buy, the "Valentine place" for the express consideration of $14,400. The contract provided that the deed should be executed and delivered upon the receipt of the purchase money on December 29, 1917.

John M. Moody and his wife, Henrietta, executed what purported to be a warranty deed to George P. Paul, conveying to him the "Valentine place" for the express consideration of $14,400. This deed purported to be executed and acknowledged by John M. Moody on December 21, 1917, and by his wife on January 17, 1918.

This action was instituted by the appellee against the appellant on January 5, 1918.

The appellee alleged that he had bought the lands from John M. Moody; that appellant was a tenant of Moody in 1917; that his tenancy had terminated in 1917, but that he was attempting and threatening to enter upon the appellee's premises and that unless restrained the appellant and his subtenants would enter and trespass upon the appellee's land and cut and use timber therefrom to appellee's irreparable injury; that he had offered to pay appellant for the improvements which he had put upon the land; that appellant had permitted numerous leases, liens, and incumbrances to be placed upon the land and had forfeited his rights under the lease contract with Moody.

A temporary restraining order was issued against appellant by the county judge of Arkansas County, as prayed in the petition.

The appellant answered and denied that the appellee had purchased the lands from John M. Moody and denied that appellee was the owner thereof. He alleged that he was the tenant of Moody in 1917 and was still his tenant. He set up the lease contract with Moody, but denied that he had breached the same. On the contrary, he averred that he had fully complied with its terms and that same was still in full force and effect. He alleged that John M. Moody conceived the idea of executing and recording a deed conveying the lands in controversy to the appellee Paul; that he believed that Moody and Paul entered into a conspiracy against him for the purpose of canceling his lease contract and for the purpose of ousting appellant from the possession of the premises. He alleged that he believed that Paul never purchased the land but permitted Moody to execute the deed to him for the purpose of annulling his lease contract; that such action on the part of Paul and Moody was a fraud upon the rights of appellant. Appellant alleged that he and his agents had a right to occupy the premises, and, notwithstanding the fact that appellant was in actual possession of the premises under the lease contract, that a temporary restraining

order had been issued against him restraining him from entering upon the premises and from exercising any control or custody thereof; that after such restraining order was issued possession was taken by Moody or some one in his employ or control. He alleged that he believed the complaint was caused to be filed by Moody and not by Paul. Appellant alleged that he had been greatly damaged by the conduct of Paul and Moody as above set forth; that Moody had breached the lease contract; that the cost of the improvement placed on the premises less the sum of $760 per year, which he was to pay Moody as rent, was justly due him.

Appellant prayed that his answer be taken as a cross-bill against Moody and Paul and that the alleged deed from Moody to Paul be canceled; that he have damages for the breach of contract and for the improvements placed on the premises and for his costs and all other relief.

Paul, answering the cross-complaint, denied its allegations as to the conspiracy between him and Moody. He renewed the allegations of his complaint, stated that if any indebtedness was due the appellant for improvements less the rental the same was due from Moody and not from the appellee. He continued the tender for value of these improvements and prayed the court to determine the amount due the appellant, if any, and that the appellee have judgment for this sum against Moody. He prayed that the appellant's cross-bill be dismissed.

The cause was heard upon the pleadings, exhibits, documents and depositions.

The chancery court found that there was no equity in the appellant's cross-complaint and dismissed the same and entered a decree making the temporary restraining order perpetual in favor of the appellee and found that the amount due the appellant for his improvements was the sum of $3,993.60 and directed the clerk to pay the same, less the costs, out of the $5,000 in his hands deposited by appellee. Further directed the clerk to refund or

pay to appellee the balance in his hands. From that decree is this appeal.

The complaint of the appellee did not state a cause of action within the jurisdiction of a court of equity because the facts as alleged, if true, do not show that the appellee did not have a complete and adequate remedy at law. As was stated by this court in *Western Tie & Timber Co.* v. *Newport Land Co.,* 75 Ark. 286-88: "The insolvency of the defendant is not alleged. There is no allegation that there would be continuing trespasses making necessary a multiplicity of suits to redress the injury at law. No facts are alleged to show that there will be irreparable injury to the freehold." *Ex parte Foster,* 11 Ark. 304; *Myers* v. *Hawkins,* 67 Ark. 413; *Haggart* v. *Chapman & Dewey Land Co.,* 77 Ark. 527; *Burnside* v. *Union Saw Mill Co.,* 92 Ark. 118.

But, even if the allegation of insolvency of the appellant had been made and if there had been an allegation as to the necessity of a multiplicity of suits in order to stay the hand of the trespasser, still the complaint would not have stated a cause of action in equity for the reason that the appellee's title was in dispute. "Whenever the complainant's title is disputed in case of trespass, the court of equity will not interfere by injunction on the ground of a multiplicity of suits unless he has successfully established his title by trial at law." Syllabus 5, *Carney* v. *Hadley,* 32 Fla. 344, 22 L. R .A. 233.

Nevertheless, the trial court had jurisdiction to adjudicate all matters in controversy between the appellant and the appellee for the reason that the appellant prayed that his answer to appellee's complaint be taken as a cross-bill against the appellee and asked that the deed from Moody to appellee be canceled and that he have damages for the breach of the lease contract between himself and Moody. This gave the court jurisdiction over the subject-matter of the controversy between the appellant and the appellee, and, having acquired jurisdiction for any purpose, the trial court correctly exercised it for the

purpose of settling the rights of the parties to the action. *Pollack* v. *Steinke,* 100 Ark. 28-35; *Galloway* v. *Darby,* 105 Ark. 559; *Ferguson* v. *Rogers,* 129 Ark. 197-203.

The appellant waived "all objections to the jurisdiction by filing a cross-bill asking for affirmative relief, and upon the issue thus joined, proceeding to final adjudication." *Hurbottle* v. *Central Coal & Coke Co.,* 134 Ark. 254-6, and cases there cited.

If there was a breach of the lease contract by Moody in entering into a conspiracy with Paul for the purpose of ousting the appellant from the possession of the premises, then Moody was liable to the appellant for all the damages growing out of such a breach, including the illegal or wrongful issuance of the temporary restraining order. But, on the other hand, if Moody made a *bona fide* sale of the land in controversy to the appellee and notified the appellant of that fact and offered to pay appellant for his improvements in compliance with the provisions of the lease contract, and if appellant refused to accept such offer and thereafter set up a claim to the land in controversy and was interfering with the appellee or his vendee in his possession and control of the premises, then the appellant breached the lease contract and in an action in equity by him to cancel the deed from Moody to Paul, the court of equity would be justified in finding that the appellant had no right to continue to hold the land and that no damages had accrued to him by reason of the issuance of the temporary restraining order.

This brings us to a consideration of the issue as to whether or not the purported contract for the sale of the land by Moody to Paul and the purported deed afterward executed by him to Paul in pursuance of such contract were *bona fide* transactions or whether they were the result of a conspiracy between Moody and Paul for the purpose of canceling the lease contract as alleged in appellant's answer and cross-bill.

The testimony on this issue is exceedingly voluminous, and it would unduly extend this opinion, and could

serve no useful purpose as a precedent, to set out the testimony in detail and discuss the reasons for the conclusion we have reached. The issue is purely one of fact. The testimony has been carefully analyzed and elaborately argued in the briefs of the respective counsel. Counsel for the appellee has challenged the accuracy of appellant's abstract of the testimony and we therefore have examined the record and do not find that any essential particulars for the proper presentation of appellant's cause have been omitted.

After a careful consideration of the facts found in the record we are convinced that the appellant has not proved by a preponderance of the testimony that the deed executed by Moody to Paul does not evidence a *bona fide* sale and purchase of the land in controversy. Appellee met the burden of proof required of him to sustain the cause of action stated in his complaint when he showed by his testimony and the testimony of Moody that the land in controversy was purchased by the appellee from Moody. Both Moody and the appellee so testify and they adduce a contract for the sale and purchase and also the deed evidencing the transfer. They testify to the execution of these instruments.

The appellant alleged that the contract and deed were but the consummation of a conspiracy to defraud the appellant of his rights. The burden was upon the appellant to show that the contract and deed which he asked to have canceled were fraudulent. Appellant brings forward testimony of circumstances which would warrant the suspicion that the alleged sale of the land by Moody to Paul was a bogus transaction.

We have considered the entire testimony in the record which tends to throw light upon the transaction, and our conclusion is that the testimony adduced by the appellant is not sufficient to show by a clear preponderance that Moody and appellee had entered into a conspiracy to defraud the appellant. On the contrary, the testimony of Moody and the appellee and the facts and circumstances

proved by other witnesses together with various exhibits, letters and documents adduced at the hearing prove by a preponderance of the evidence that the transaction between Moody and Paul was *bona fide.* At least it can not be said that their conduct was wholly incompatible with an honest purpose.

While fraud may be established by circumstantial evidence, yet the circumstances must be so strong and well connected as to clearly show fraud. Solemn written instruments, the execution of which are proved beyond peradventure, can not be overturned by circumstances which only lead to a mere suspicion of their execution for a fraudulent purpose.

In *Bank of Little Rock* v. *Frank,* 63 Ark. 16-22, Judge BATTLE announced the familiar rule that circumstances "may be sufficient to excite suspicion, but suspicion is not the equivalent of proof. Circumstances necessary to prove fraud must be such as naturally, logically and clearly indicate its existence." *Russell* v. *Brooks,* 92 Ark. 509, and other cases collated in 3 Crawford's Digest, pp. 2299-3002.

Moody, under the lease contract, had the right to sell his land when, where and to whom he pleased. The only limitation being that in the event of a sale he should pay to the appellant the amount expended by him in the establishment of the rice plant, and, if the sale were made after the appellant began his crop for any year, that he should have until December 31 following the sale to harvest his crop.

The conduct of Moody and Paul in connection with the alleged sale and purchase of the land in controversy, under the evidence, is consistent with, and justified by, the provision of the contract of lease between the appellant and Moody.

The amount which the appellant had expended for improvements was likewise a question of fact, and the finding of the chancellor on that issue is not clearly against the preponderance of the evidence.

We find no error in the decree, and it is, therefore, affirmed.