Fulk *v.* Gay, Trustee.

4-8271                                    205 S. W. 2d 24

Opinion delivered October 27, 1947.

*Rose, Dobyns, Meek & House,* for appellant.

*Barber, Henry & Thurman,* for appellee.

Robins, J. The lower court sustained appellee's motion to dismiss complaint of appellants asking for an accounting by appellee of what they alleged was a trust fund belonging to them. The ground of dismissal, asserted by appellee and sustained by the lower court, was that the controversy presented was one over which the United States District Court for the Eastern District of Arkansas had sole jurisdiction by reason of a bankruptcy proceeding theretofore instituted therein.

The sole question presented by this appeal is whether the lower court was without jurisdiction by reason of this bankruptcy proceeding.

In 1929, Francis Guy Fulk and certain of the appellants borrowed from the Federal Bank & Trust Company the sum of $362,500 bearing interest at 6 per cent. from date to maturity and at 10 per cent. thereafter, and to secure the said indebtedness executed to the Federal Bank & Trust Company a trust deed on certain real estate in Little Rock.

Being unable to pay the indebtedness, Francis G. Fulk, Jr., as administrator of the estate of Francis Guy Fulk, one of the mortgagors, who had died intestate, filed a petition on April 7, 1936, in the United States District Court for the Eastern District of Arkansas, Western Division, under the provisions of § 74 of the Bankruptcy Act, listing the debts and assets of the estate, and asking that proceedings be had for a "composition or extension," as provided for under that section. Petitions in identical form were filed in the bankruptcy court by Florence M. Fulk, Augustus M. Fulk and Frank M. Fulk, other makers of the $362,500 note.

These petitions having been referred to the referee in bankruputcy no action, other than the appointment of J. H. Penick as trustee, was had in regard to these petitions for more than three years.

The United States District Court, on June 30, 1939, made an order, reciting the amendment of the Bankruptcy Act by the "Chandler Act," of June 22, 1938, which, as the court order set forth, "extends and gives greater power to debtors in making arrangements with their creditors regarding debts secured by real estate in what is called Real Estate Arrangements under Chapter XII," and referring the proceeding to the referee in bankruptcy for "such further proceedings therein as are required by the Bankruptcy Act."

In March, 1940, the debtors filed in the bankruptcy court an "Amended and Substituted Proposal" for an extension, in which, for the purpose of effectuating the settlement proposed, all of the other named appellants joined. This proposal provided that the creditors, holding first mortgage notes aggregating $362,500, plus ac-

crued interest to October 31, 1939, amounting to $57,450, should forgive one-half of the interest, reduce the interest rate from 6 per cent. to 4 per cent. and should accept new notes aggregating $391,225, payable November 1, 1944; that the debtors should, in order to secure this debt, join in a deed of trust to a trustee to be selected by the note holders, conveying to such trustee the four tracts described in the deed of trust of May 22, 1929, and that they would execute deeds conveying said real estate to this trustee selected by the note holders, which deeds were to be placed in escrow for the extension period; and that if the indebtedness were not fully paid by November 1, 1944, the escrow agent should deliver the deeds to the trustee, for the creditors, in full satisfaction of the indebtedness due from debtors. It was also provided in the proposal that the trustee might, at his discretion, use any surplus arising from rentals of the property to purchase some of the outstanding notes to be executed by the debtors. None of this surplus was so used.

This proposal was accepted by the creditors, and, upon application of the debtors for confirmation of the arrangement, under Chapter XII of the Act of Congress relating to bankruptcy, 11 U. S. C. A., § 801 *et seq.*, was confirmed by the bankruptcy court on April 22, 1940, and the court at the same time ordered that all title and interest of the trustee in bankruptcy in the real estate be divested out of him, and all title revested in the debtors, so that they might carry out their agreement by executing conveyances as stipulated.

T. J. Gay was selected as trustee by the creditors, and the trustee in bankruptcy was directed by the federal court to turn over all funds in his hands to Mr. Gay. The deed of trust was executed by the debtors to T. J. Gay, trustee, and deeds of conveyance to T. J. Gay, trustee, were also executed by the debtors and were placed with the Commercial National Bank as escrow agent.

J. H. Penick, trustee in bankruptcy, filed his report in the United States District Court on June 21, 1940, and the court on that day made an order discharging him as

such trustee and canceling his bond. This is the last order of record in the bankruptcy proceedings.

T. J. Gay, the trustee selected by the creditors, took possession of the properties described in the deed of trust to him, operated and managed same for the period of the extension, and on November 1, 1944, the debt not having been paid, made demand upon the escrow agent for the deeds, and the escrow agent delivered the deeds to him. The debtors, as they had agreed to do in their proposal, after their deeds had been delivered by the escrow agent to the trustee, aided the creditors in disposing of the property by giving written assurance that they claimed no equity of redemption therein. ·

When the deeds were delivered to T. J. Gay, trustee, he had on hand certain moneys which accrued from the operation of the properties.

This suit was brought in the chancery court to have an accounting of and to recover these funds, on the theory that they were surplus funds, arising from administration of the trust.

Appellee, T. J. Gay, trustee, filed a motion to dismiss the complaint, asserting that the bankruptcy court had exclusive jurisdiction to determine the disposition to be made of the fund involved.

Appellee Gay, in his individual capacity, and not as trustee, filed motion on October 15, 1945, in the chancery court, reciting that he had by agreement of all parties paid into the registry of the court the sum of $25,000 "to cover any possible judgment for excess funds, if any, remaining in his hands November 1, 1944, should a judgment be rendered for the plaintiffs in the above entitled cause." In the order of the lower court dismissing appellants' complaint for want of jurisdiction it was directed that the sum of $25,000 paid by Gay into the registry of the .chancery court should remain therein pending our decision on this appeal.

The record reflects that the entire subject matter of the litigation in the federal court was, by an order of that

court, agreed to by all parties in interest, taken out of that court, and under the approved arrangement, title of the trustee in bankruptcy to the property involved was divested out of him and invested in appellants, so that they might, in accordance with the composition agreement, execute conveyances to a trustee selected by the creditors. The trustee of the bankruptcy court was discharged and his bond canceled by that court. The trustee selected by the creditors gave bond to guarantee the faithful performance of his duties, and this bond was filed, not in the bankruptcy court, but with the escrow agent agreed upon by the parties. Appellants executed the deeds to the property and delivered them to the escrow agent, who, in compliance with the arrangement, finally delivered them to the creditors, who apparently have sold the property. The trustee under the contract was not required to, and did not, make any report to the bankruptcy court, and that court has never exercised or been called upon to exercise any control over this trustee or the funds which he was handling. Under the terms of the composition arrangement, approved by the federal court, appellants have been, by reason of the delivery to the creditors of the deeds by the escrow agent, fully discharged from all liability on the indebtedness which caused the jurisdiction of the bankruptcy court to be invoked and which formed the basis of its jurisdiction.

It thus appears that the debt which precipitated the bankruptcy proceeding has been paid; that the title and possession of all property being administered by the bankruptcy court was by order of that court revested in the debtors. The creditors have obtained all the property, and the debtors have been absolved from the debt. The function of the bankruptcy court in the premises has been fully discharged, and the order of that court authorizing the composition, and discharging the trustee, was in effect a final dismissal of the case.

It is not necessary, for an order of court to constitute a dismissal or termination of litigation, that apt and exact words to that effect be used.

It is sufficient if it appears from the order made that all matters of which the court has jurisdiction in the case have been disposed of, so that there remains no further relief to be awarded and no further jurisdiction to be exercised.

In disposing of a contention somewhat similar to that made by appellee here, it was said in *Andrews* v. *Smith,* 5 F. 833:

"When the compromise agreement was made the trustees were, as has been before stated, in possession, and were also receivers to raise the rent due the lessor from the income. That agreement made provision for all rent then due, and provided a new basis for it thereafter, for certain specific payments, and for the application of the residue of the net income; and then that 'all claims and demands between the parties hereto, not herein otherwise provided for, shall be waived and abandoned, and no further claim or proceeding shall be made or had in respect thereto.' The agreement was carried into effect, but the trustees were not otherwise formally discharged as receivers, and because they were not formally discharged it is said that the receivership continued. But a receiver is the hand of the court, and whatever property he holds is held for the court. After that agreement there was no property left in the custody of the court for a receiver to have. The parties had provided for the custody and disposition of the property, and left nothing for the court to do about it. There was no occasion for the court to discharge them, for the parties themselves had accomplished the discharge. Had any party insisted upon their continuing as receivers as against the bondholders, the request could not well have been granted."

Other cases in which somewhat similar views were expressed are: *International & Great Northern Railway Company, et al.,* v. *Anderson County, et al.,* 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807; *Shields* v. *Coleman,* 157 U. S. 168, 115 S. Ct. 570, 39 L. Ed. 660; *Wabash R. Co.* v. *Adelbert College,* 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379.

The 1898 Bankruptcy Act (subdivision j of § 202, 1937 Edition, Title 11, U.S.C.A.) provides that upon confirmation of a composition the consideration thereof should be distributed, and, unless the court should deem proper to retain jurisdiction to protect the estate and enforce terms of the extension agreement, "the case be dismissed." The present law (Chandler Act of June 22, 1938) provides that after confirmation of the arrangement, unless otherwise provided in the arrangement, and except in certain contingencies not present in the case at bar, the case shall be dismissed. It therefore appears that the bankruptcy law contemplated that, in a situation such as existed when the federal district court approved the arrangement between appellants and their creditors, the proceeding in that court should be terminated.

It is argued by appellees that the fund sought to be reached by appellants in the case at bar is a "surplus" which arose in and from the bankruptcy proceeding and as such must be administered by the bankruptcy court. But under the record here this fund did not arise in or from the bankruptcy proceeding. The fund arose solely from the operation of the property, after the bankruptcy court had surrendered it, and the parties—debtors and creditors—had taken charge of it and placed it in the hands of their own trustee, who was responsible for his administration to these debtors and creditors and to no one else.

We conclude that, since the fund herein involved did not arise from any proceedings in the bankruptcy court or from any operation of any official of that court, and the federal court had fully adjudicated all matters involved in the proceeding before it and had made an order by which it should have, and, in reality, has divested itself of jurisdiction in the matter, the chancery court had jurisdiction of the case at bar.

The views expressed above make it unnecessary to decide whether the appellee, by depositing the disputed fund in the lower court and asking an acquittance of all further liability has, in reality, asked from that court affirmative relief, as if by bill of interpleader, and has

thereby waived any right to object to jurisdiction. *Norton* v. *Miller*, 25 Ark. 108; *Morgan Engineering Company* v. *Cache River Drainage District*, 115 Ark. 437, 172 S. W. 1020; *DuFresne* v. *Paul*, 144 Ark. 87, 221 S. W. 485; *Purnell* v. *Nichol*, 173 Ark. 496, 292 S. W. 686; *Rader* v. *Payne*, 188 Ark. 899, 68 S. W. 2d 457; *Chamber of Commerce of Hot Springs* v. *Barton*, 195 Ark. 274, 112 S. W. 2d 619.

The decree of the lower court is reversed and the cause remanded with directions to the lower court to overrule appellee's motion to dismiss and for further proceedings not inconsistent with this opinion and the principles of equity.