CHRISTINA C. BROWN AS ADMINISTRATRIX OF THE ESTATE OF JOHN A. BROWN, DECEASED v. DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY AND ANOTHER.[1]

November 12, 1920.

No. 21,893.

**Death by wrongful act — questions for jury.**

1. Under the evidence defendants' negligence, decedent's assumption of risk and contributory negligence, were for the jury.

**Jury — omission to charge without prejudice.**

2. The court did not instruct as to when a verdict by five-sixths of the jury could be rendered. The omission was not prejudicial, since a unanimous verdict was returned within three hours after the cause was submitted to the jury.

**Charge to jury — assumption of risk.**

3. The instructions given were correct and complete. The court concededly gave a full and correct explanation of the meaning of assumption of risk, and it was not necessary to repeat it with every mention of the phrase.

**New trial — newly discovered evidence.**

4. There was no abuse of discretion in refusing to grant a new trial on the ground of newly discovered evidence.

[1]Reported in 179 N. W. 1003.

**New trial because of misconduct of jurors — when their affidavits are admissible.**

5. Affidavits of petit jurors may be considered upon a motion for a new trial, based upon their misconduct, insofar only as the misconduct relates to occurrences outside the jury room or when they are not under the control of the court. They are not admissible to show the motives or reasons which actuated the jury in arriving at a verdict or disclose their discussions in the jury room. Whether misconduct of the jury, not induced by the prevailing party, should entitle to a new trial, rests largely with the trial court. That prejudice resulted to plaintiff from the alleged misconduct in the instant case, does not so clearly appear that we can hold the trial court's refusal of a new trial to be an abuse of judicial discretion.

Action in the district court for St. Louis county, to recover $35,250 for the death of plaintiff's intestate while in defendants' employ. The answer alleged that the dangers of decedent's work were known and appreciated by him and he voluntarily assumed the risk therefrom. The case was tried before Cant, J., who when plaintiff rested denied defendants' motion to dismiss the action, and at the close of the testimony denied defendants' motion for a directed verdict, and a jury which returned a verdict in favor of defendants. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*Olof L. Bruce* and *B. W. Wilder,* for appellant.

*Thomas S. Wood* and *G. A. E. Finlayson,* for respondents.

HOLT, J.

The action is to recover damages for the death of plaintiff's intestate by the alleged wrongful act of defendants. A verdict was returned in favor of defendants and plaintiff appeals from the order denying a new trial. Walter D. Hines, Director General of Railroads, is one of the defendants, but no reference will hereinafter be made to him, and the railroad company will be considered as the sole defendant.

John A. Brown, plaintiff's intestate, was a locomotive engineer on an interstate passenger train of defendant, when on February 7, 1919, at about 7:35 a. m. he received injuries resulting in death. The circumstances were these: In going from Marquette to St. Ignace, Michigan, the train passed the small station of Seney, where was an old coal loading

platform. The edge of the platform was about two inches higher than the window sill of the locomotive cab, alongside of which is the engineer's seat. The clearance between this sill and the edge of the platform was about 16 to 17 inches. Mr. Brown was well acquainted with the situation, having for years had this run, and passing this place many times each month. On the morning in question the train had stopped at the station. The loading platform was some 600 feet further east. As the train started up, Mr. Brown was seen leaning out of the cab looking straight ahead, but, when within a short distance of the platform, it was noticed that he turned his head down and back, evidently to watch the operation of the injector which had given trouble that morning. He leaned out so far and so low that the corner of the platform struck his head back of the left ear. Death followed shortly.

Negligence was charged against the defendant because of the failure to have the injector in working condition. Mr. Brown was under the necessity of watching its operation and assuming the position he was in when struck, also because the unused coal loading platform was suffered to remain in dangerous proximity to the railroad track, and the track opposite had been permitted to become uneven so that it caused the locomotive to sway and lean towards this platform in passing. The answer denied negligence and set up assumption of risk and contributory negligence as defenses. It would serve no useful purpose to further detail the evidence. We are satisfied that the court was right in submitting to the jury defendant's negligence and the defenses pleaded by it. That the jury's findings on these issues are amply sustained by the evidence is, on this record, not open to serious doubt.

Little need be said upon the objections urged to the court's charge. The jury reached a verdict within three hours after the case was submitted. Hence it is plain that the omission to instruct that 10 might return a verdict after 12 hours deliberation could not possibly have been prejudicial. Moreover, no request on the subject was made or suggested. There is no competent legal proof in the record that any juror privately requested the court to inform them as to any Michigan law governing the matter of compensation to plaintiff for the death of Mr. Brown, and no reversible error can be predicated on the claim that the jury should have been instructed thereon. Error is also assigned in re-

spect to the charge dealing with the topic of assumption of risk. The particular fault is that the court did not, at every reference to the subject, explain that the extraordinary risks to which an employee may be exposed are not assumed, unless they are known and fully appreciated by him. It is conceded that at one place in the charge is a complete and legally accurate definition by which the jury should be guided. This is sufficient. We have read the learned trial court's charge with care, and consider it an impartial, adequate, correct and lucid presentation of the issues litigated and the legal principles to be applied in their determination.

The alleged newly discovered evidence, on which a new trial was asked, does not impress itself of such importance that we could justly hold it an abuse of judicial discretion to deny the motion. It only related to the character of the subsoil under the railroad track in the vicinity of this coal loading platform. It is enough to say that, whatever the subsoil, changes in the road-bed are less likely to occur in February than at other times. But were it otherwise, the need of this evidence should have suggested itself to plaintiff before the trial. At any rate, it is an incidental matter of so remote bearing on the issues involved that it would not likely influence the decision of a jury, and the court had the right to so conclude.

The refusal to grant a new trial because of the misconduct of defendant and of the jury is assigned as error. The record furnishes not the slightest suggestion of improper conduct on the part of defendant or of its officers, agents or attorneys, and the trial court's determination that the alleged misconduct of the jury did not entitle plaintiff to a new trial must be reviewed with that in mind.

There were affidavits presented to the court from eight of the jurors, to the effect that early during the trial the jurors became imbued with the notion, freely expressed between them, that under the Michigan compensation statute plaintiff was entitled to $7,500 from defendant. The affidavits of two jurors declare that one of the jurors stated that he knew that that law so provided, and that to the knowledge of three or four other jurors he framed a question in writing on that matter which he was to submit to the court for an answer; that he reported back that he had done so, and that the court said no answer could be given, but that it

would come out during the trial. Insofar as the affidavits set out what occurred outside the jury room, they may be considered. And we think the above is a fair summary of what they contain of admissible evidence. But the jurors' affidavits must be disregarded and held inadmissible insofar as they purport to state what was said and done while the jurors were under the direct control of the court or when in the jury room, or where they attempt to give reasons and motives for concurring in the verdict rendered. Both propositions have long been considered as settled in this state. Hurlburt v. Leachman, 126 Minn. 180, 148 N. W. 51, and the prior cases there cited.

It is obvious that the speculation and discussion of some other possible mode of compensating plaintiff for the loss sustained than by a verdict herein was entirely improper. The jury had sworn to found such a verdict solely upon the evidence received and the law given upon the trial, and not upon what they or some one amongst them deemed the law to be. But every misconduct does not necessarily mean a new trial. This is especially true where, as here, no showing is made in any manner connecting defendant, its agents or attorneys with the misconduct. In State v. Snow, 130 Minn. 206, 153 N. W. 526, it was said:

"Where the misconduct is without the knowledge or participation of the successful party, much liberality is indulged in sustaining the verdict, notwithstanding such misconduct. It is not the policy of the law to punish the successful litigant for the sins of the jury."

The duty to determine whether the misconduct of the jury, not induced by the prevailing party, may have been prejudicial to the one complaining rests primarily upon the trial court, and its decision is entitled to the same weight on appeal as is accorded the trial court's finding upon other questions of fact. Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716. If, as a matter of fact, the discussions of the Michigan compensation statute had interested and concerned the minds of the jury to the extent the framer of the jurors' affidavits seeks to convey, we should have expected that some juror would have reminded the court of the need of information before, or at the time the case was submitted. That no such reminder was given may have been significant to the trial court. That court had also the opportunity to observe the character of the jury and perhaps personally knew the mental make-up of individual members

thereof. He is therefore in a much better position than this court to determine whether the misconduct referred to was likely to affect the verdict to plaintiff's prejudice. It is beyond doubt true that, during the progress of a trial and in the jury room, jurors, in spite of their oaths and direct admonitions of the court, often will urge some reason or ground for a verdict other than those furnished by the evidence, such as personal experience and general knowledge gained outside of the court room. Whether misconduct of this sort should lead to a new trial must largely be left to the judgment of the trial court. State v. Williams, 96 Minn. 351, 105 N. W. 265, and State v. Briggs, 122 Minn. 493, 142 N. W. 823.

That the learned and experienced trial judge was wrong when he concluded that the conduct of the jury herein referred to did not prejudice plaintiff, is not so well established that we can hold that it was an abuse of judicial discretion to deny a new trial, but it may be stated that we should have felt less hesitancy in approving his judgment had plaintiff's motion been granted.

Order affirmed.