# IN RE TRUST CREATED BY GLADYS PHILLIPS. PASCHA M. GOLDBERG, PETITIONER.

90 N. W. (2d) 522.

May 2, 1958—Nos. 37,328 to 37,368.

*Henry Halladay, Charles Frisch, Dorsey, Owen, Barker, Scott & Barber, Samuel Saliterman,* and *Michael Robins,* for appellant.

*Maslon, Kaplan, Edelman, Joseph & Borman,* for respondent.

MATSON, JUSTICE.

Appeal in each of 41 different trust proceedings from an order granting respondent's motion to dismiss appellant's petition for lack of jurisdiction over the subject matter. The appeals have all been consolidated for consideration by this court.[1]

The sole issue raised by these appeals is whether a person not named a trustee by the trust instrument of an express trust, nor appointed a trustee by a court, who performs trustee activities in his capacity as an agent for the named or appointed trustee is entitled to invoke the in rem jurisdiction of the district court under M. S. A. 501.33 or under § 501.44.

The foregoing issue arises out of appellant's contention that the functions he performed as an agent of the named trustees were the equivalent of the functions of a trustee, and that he is entitled to have his true status as a trustee recognized and confirmed by the court. Because of his alleged status as a trustee, he prays that he be allowed to file an account of his past acts and doings and that he be paid his charges, fees, and attorney's fees. In addition to approval of, and absolution for, his past acts as a trustee, he seeks release from responsibility for the future administration of the trusts.

---

[1] The several appeals have the following filing numbers in this court, to wit: 37,328 to 37,368, both numbers inclusive.

All 41 trusts[2] are inter vivos, profit-sharing trusts which were established at various times by separate trust instruments. Each trust is a separate entity and has its own trust res. The settlors, the trustees, and the beneficiaries (some of whom are minors, unborn, or contingent) vary from trust to trust. As to many of the trusts the persons involved are wholly different and unrelated. Respondents in these appeals, with few exceptions, are the settlors, trustees, and beneficiaries of the various trusts.

Appellant has been a practicing public accountant with offices in Minneapolis for more than 25 years. He participated in the discussions and decisions which led to the creation of the 41 trusts. These trusts were established during the 1940's by the various settlors for the purpose of minimizing the effect of the income tax, to obtain the advantages of profit-sharing trusts for their business, and to obtain the advantages of inter vivos trusts for their families and other persons. Appellant, although not a named or appointed trustee, at all times *in his role as an agent* was consulted, formulated programs, participated in investment decisions, reviewed the propriety of proposed trust actions, and in substance performed virtually the same functions, and to the same extent, as he did for 11 other trusts (not involved herein)[3] in which he was either a named or a court-appointed trustee. Among other things, appellant had custody of the trust instruments and trust assets; did the investing of those trust funds which were invested in United States bonds; watched the cash position of each trust; determined from an examination of the trust instruments which trusts had the power to invest in various types of securities or ventures; participated in determining whether the trust should exercise rights to stock issued by corporations whose securities were held by the trust; participated in the management of businesses in which the trusts had an interest; decided when and whether to pay the expenses of the trust; signed the checks, collected receivables when due, and distributed the income and maintained the bookkeeping and accounting systems and records for each

---

[2]Appellant filed a total of 52 petitions. Eleven of these petitions involved trusts in which appellant was either named as a trustee or appointed as a trustee by the court. None of the 11 are involved in the present appeal.

[3]See footnote 2.

of the trusts; and, at conferences with the settlors and trustees, participated actively in making decisions as to trust matters.

By way of comparison the *named or appointed* trustees also engaged in trust activities but their activities were not as detailed or numerous as appellant's. Taking as an illustration one of the profit-sharing trusts which the parties have agreed is representative, the trustees named or appointed performed activities such as signing some checks, executing necessary documents of authorization, endorsing bonds, and signing certificates of beneficial interest in the trust. In addition, the trustees were designated as trustees on the trust checks and received trust correspondence.

At some time in 1955 or 1956, appellant was apparently removed as agent for the various trustees of the 41 trusts. Thereupon the trust assets which were formerly under his custody, and control, were transferred to other persons. Appellant thereafter filed his petitions to determine his status as to these trusts. As already noted, the appeals herein are taken from an order granting respondent's motion for dismissal. The facts have been stated in the light most favorable to the appellant.

Despite his role as agent, did the appellant, by virtue of the functions he performed, acquire a status enabling him to invoke the statutory in rem jurisdiction of the district court? He so contends on each of three alternative grounds:

(1) First, because he is the equivalent of a person appointed as trustee of an express trust by a will or other written instrument and thus may have his status confirmed pursuant to § 501.33;

(2) Second, because he is a person who has filled a vacancy in the office of trustee and should be appointed trustee under § 501.44;

(3) Third, because he is a "person other than the trustee originally named, or appointed by a court of this state, [who] has in good faith done any act in execution of the trust" within the meaning of § 501.44, and thus may have his act confirmed.

Each of appellant's novel contentions will be dealt with separately.

## I.  STATUS UNDER § 501.33

■   We turn to the first issue. Pursuant to § 501.33, may a person

who has not been named or appointed as a trustee of an express trust by a will or some other writing, *solely by virtue of having as an agent admittedly performed functions substantially equivalent to those of a trustee,* invoke the in rem jurisdiction of the district court by filing a petition to have his status as a trustee established and confirmed? Our answer must be in the negative. Section 501.33 provides:

"Upon petition of *any person appointed as trustee of an express trust by any will or other written instrument,* or upon petition of *any beneficiary of such trust,* the district court of the county wherein such trustee resides or has his place of business, shall consider the application to confirm the appointment of the trustee and specify the manner in which he shall qualify. Thereafter such district court shall have jurisdiction of such trust as a proceeding in rem." (Italics supplied.)

Appellant's position is that, while he is not a "person appointed as trustee of an express trust by any will or other written instrument," he acquired the status of a "quasi-trustee," equivalent in law to that of a trustee appointed by written instrument, and that therefore he may invoke the jurisdiction of the district court under § 501.33. In support of his asserted status, appellant argues that a comparison of the work done by him with the duties of a trustee shows that he performed most of the services required and expected of a trustee. He alleges that in every essential feature, except for the technicality of naming him in the instruments as a trustee, he was regarded as, and performed the functions of, trustee and that these functions were performed at the instance of or with the knowledge of all the settlors, beneficiaries, and trustees. He further contends that he is accountable as trustee and liable for failure to competently and faithfully discharge his duties in the same manner as if he were a trustee appointed by a court or a written instrument and that he is therefore entitled to the same protection, including a settlement of his account and other appropriate relief. Appellant argues that § 501.33 is not to be literally read, but even if it is, it nevertheless confers upon the district court the power to hold that appellant was in fact and law a trustee of an express trust, despite his not being named in the trust instruments.

We fail to see any merit in appellant's position that he may invoke

the jurisdiction of the district court under § 501.33 because he is the *equivalent of a person appointed trustee of an express trust by written instrument*. The object of all interpretation of laws is to ascertain and effectuate the intent of the legislature. § 645.16. Section 501.33 is clear and unambiguous in its wording. It was intended to apply only to the situation in which a person appointed trustee by a written instrument seeks confirmation of his written appointment. Appellant's failure to be appointed trustee by the trust instruments cannot be viewed as a mere technicality. If it was the intent of the legislature to bring within the purview of § 501.33 persons claiming to be the *equivalent* of a person appointed trustee in writing, by will or other written instrument, or persons claiming to be trustees by operation of law, or any other person falling outside its plain language, the statute would obviously have been worded more broadly. The legislature must be presumed to have understood the effect of its words and these words must be given their normal and natural meaning. See, § 645.08. We can only conclude that, pursuant to § 501.33, the district court was without power to hold—even though the trust instruments are silent thereon—that appellant in fact and in law, by implication or otherwise, has ever qualified as an appointed trustee of an express trust within the meaning of § 501.33.[4]

## II.   VACANCY THEORY UNDER § 501.44

We turn to appellant's second contention. May a person acting as an agent of a trustee invoke the court's in rem jurisdiction under § 501.44 on the theory that a vacancy in fact in the position of trustee has resulted from the delegation to the agent, by the named trustee, of the duties of the trustee, even though the named trustee is otherwise still accountable and responsible, and continuing to serve, as a trustee? The first two clauses of § 501.44 provide that:

"The district court has full power to appoint a new trustee in place

---

. [4]Appellant cites In re Declaration of Trust by Bush, 249 Minn. 36, 81 N. W. (2d) 615, 82 N. W. (2d) 221, in support of his position that a status equivalent to that of a trustee appointed by a written instrument is sufficient to bring himself under § 501.33. However, that case offers no comfort to appellant since it presented a fact situation in which the trustee was claimed to have been appointed by a written instrument—a letter.

of one deceased, resigned, or removed; and when, in consequence of such death, resignation, removal, *or other cause, there is no acting trustee,* the court, in its discretion, may appoint a trustee, or cause the trust to be executed by one of its officers under its direction; * * *." (Italics supplied.)

Appellant assumes that the district court has in rem jurisdiction to rule on his 41 petitions pursuant to its power—under the foregoing first two clauses of § 501.44—to appoint a new trustee when in consequence of death, resignation, removal, or other cause, *there is no acting trustee.* He argues that the facts demonstrate that he has performed most of the functions of the trustees while the named trustees have substantially failed to perform their functions as such; that no one has acted as trustee except appellant; and that under the circumstances the delegation of the functions of the trustees to appellant went so far as to create, in effect, a vacancy in the office of trustee for *"other cause"* within the meaning of § 501.44. (Italics supplied.)

There are several reasons why there is no merit to appellant's argument. Throughout the entire period there has been a trustee appointed by the trust instrument (or by the court) for each of the trusts involved here. Each of the named trustees has accepted the appointment. Appellant does not dispute this but argues that, merely because there are named trustees, the district court is not prevented from *filling a vacancy in the actual functioning of that office* by confirming appellant's status as the equivalent of a trustee. Obviously, there cannot be a vacancy in the trusteeship within the meaning of § 501.44 simply because the named trustee has delegated his functions to another but is still accountable and responsible, and serving in his capacity as a trustee. Excessive delegation of his functions may subject an appointed trustee to liability therefor,[5] or preclude him from compensation for his services,[6] but that fact is here of no significance.

Unless a trustee has become physically or mentally incapable of executing the trust, or until he is otherwise discharged from his liabilities

[5]See, 2 Scott, Trusts (2 ed.) §§ 171.1, 171.2; 54 Am. Jur., Trusts, § 309.
[6]See, e. g., 19 Dunnell, Dig. (3 ed.) § 9944; In re Trusts Created by Butler, 223 Minn. 196, 26 N. W. (2d) 204, 172 A. L. R. 977.

and duties and released from his fiduciary capacity as trustee by removal (e. g. under § 501.43), resignation (e. g. under § 501.42), or death, it cannot be said that there is a vacancy within the scope of § 501.44. Applying this principle to the instant case it is clear that there were no vacancies.

The consequences of appellant's interpretation would be to allow the district court to assume an in rem jurisdiction to appoint a trustee where there has been no resignation, removal, or death of a named trustee and where the existent named trustee has the capacity and duty to execute the trust, and indeed, still remains liable for its proper execution. Intent to bring about such an unreasonable result may not be imputed to the legislature.

Appellant asserts, however, that Wertin v. Wertin, 217 Minn. 51, 13 N. W. (2d) 749, 151 A. L. R. 1302, is authority for the proposition that the district court has in rem jurisdiction to fill a vacancy in the trusteeship under § 501.44 even though there is a named trustee ready, willing, and able to act. In that case a testator, in creating a testamentary trust, made no provision for the appointment of successors to named trustees in the event of vacancies. *A vacancy occurred in the office of trustee because of the failure of one of the named trustees to qualify.* We held that the district court, which had complete jurisdiction in personam of the named trustees and trust beneficiaries, had authority to appoint a cotrustee to act as such with the one named in the will. The case does not aid appellant because the district court there already had the requisite jurisdiction to appoint a successor cotrustee to fill an existing vacancy. It is settled that the powers of the district court to appoint trustees *once jurisdiction has been acquired* are very broad (90 C. J. S., Trusts, § 217d), but that principle has no application herein.

### III. Does Appellant Qualify Under § 501.44 As A Person Who, Acting As A Trustee, Has Performed Acts In Execution Of The Trusts?

We come to appellant's final contention that, even if § 501.33 and the first two clauses of § 501.44 are inapplicable, he may nevertheless invoke the jurisdiction of the district court under the third clause of § 501.44, which reads:

"* * * and when any person other than the trustee originally named, or appointed by a court of this state, has in good faith done any act in execution of the trust, the court may confirm such act."

Appellant contends that he comes within the meaning of the aforesaid clause on the ground that he clearly is a person *other than the trustee originally named or appointed by a court of this state,* and that he has in good faith done acts in the execution of the trusts. Appellant's contention is erroneous for two reasons, *first* because a reasonable construction of such third clause is indicative of a legislative intent that it shall apply only to a person who performs acts in the execution of the trust when there is a *trustee vacancy,* and *second* because the person performing such trust duties must be one who is *acting as a trustee* although he is not the trustee originally named or appointed by a court of this state.

We first turn to a construction of the statutory language in the light of appellant's contention that the literal wording of the third clause confers upon the court a broad power of confirmation applicable not only to situations where there is a trustee vacancy but also to those situations where there is no vacancy. Since the literal wording of this clause—which is a unique provision not found in the trust statutes of other states—is not entirely free from ambiguity, we must, in ascertaining the legislative intent, take into consideration the entire statute and all the surrounding circumstances.[7] In accordance with the general rule of construction that a statute should be read as a whole,[8] the provisions introduced by an amendatory act should, as to future transactions, be read together with the provisions of the original section that were reenacted without change by the amendatory act as if they had all been originally enacted as one section.[9]

In the light of this principle, the amendatory third clause of § 501.44

[7]See, § 645.16; City of St. Louis Park v. King, 246 Minn. 422, 75 N. W. (2d) 487; Gale v. Commr. of Taxation, 228 Minn. 345, 37 N. W. (2d) 711; Governmental Research Bureau, Inc. v. Borgen, 224 Minn. 313, 28 N. W. (2d) 760.

[8]Kollodge v. F. & L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62.

[9]1 Sutherland, Statutory Construction (3 ed.) § 1934.

is to be construed as if related to the statutory situation preceding it, namely, the situation "when, in consequence of such death, resignation, removal, or other cause, there is *no acting trustee.*"[10] (Italics supplied.)

Furthermore, it is significant that § 501.44 does not stand alone but is the fourth of a series of four consecutive related sections, all dealing with matters involving vacancies in the offices of trustees (§§ 501.41 to 501.44). The original three sections standing in the same sequence and dealing with the same subject matter represent reenactments from territorial law (see, Rev. Stat. [Terr.] 1851, c. 44, §§ 24 to 27). A statutory section as amended and the unaltered sections of the act or compilation of which it is a part relating to the same subject matter are to be read together.[11] Thus, construed in its entirety, and when interpreted in the light of its statutory history, setting, and content, it is clear that the third clause of § 501.44 (constituting the fourth in the sequence of related statutory provisions) was intended to be applicable only to persons performing acts in the execution of a trust when there is a trustee vacancy in the sense that no trustee originally named or appointed by a court of this state is serving in that capacity. In the instant trusts there is no such vacancy.

Appellant, for an additional reason, does not come within the scope of the third clause of § 501.44 because he at no time was a person *acting as a trustee* when performing acts in execution of the trusts. He argues that, even if his status corresponded to that of an agent rather than a trustee, he is nevertheless entitled to bring this proceeding under that clause because he is a person—regardless of his status—who in good faith did acts in execution of the trust. Appellant's misconstruction of the meaning of the statute becomes apparent when we examine the wording of the third clause as it first appeared in the 1889 amendment. It read:

"* * * and it may also, where a trust has in good faith been *assumed to be executed by a person other than the trustee originally named, or appointed by a court of this state,* ratify, adopt and confirm any or all

---

[10]The statute in which the third clause first appeared was similar in form and substance to the present statute. See, L. 1889, c. 82, § 1.

[11]1 Sutherland, Statutory Construction (3 ed.) § 1935.

the acts of such person *so acting as trustee in the execution of such trust."* (Italics supplied.) L. 1889, c. 82, § 1.

Construing the original section as a whole, it is apparent that the natural import of the language is that it should apply only to *"a person other than the trustee originally named, or appointed by a court of this state"* and while he is *"so acting as trustee in the execution of such trust."* (Italics supplied.) If the legislature had intended to include within the scope of this clause persons who are not acting as trustees, there would have been no necessity to use such limiting language as "the trustee originally named, or appointed by a court of this state" and the further qualifying phrase "so *acting as trustee* in the execution of such trust." (Italics supplied.) If a broader coverage had been intended, no doubt the statute would have been worded so as to refer merely to a person "other than a trustee." No change in the original wording of the amendment was made until the 1905 revision (R. L. 1905, § 3265) and that change, corresponding to the present wording, must be presumed to have been intended not as one of substance but to have been made simply in the interest of conciseness without any alteration of meaning.[12] It follows that a reasonable construction of the third clause limits its application to a person who has done acts in execution of the trust *while acting as trustee under color of authority.* Clearly appellant, who acted merely as an agent, is not a person who acted as trustee under any color of authority in the execution of the trusts.

Our conclusion as to the scope and meaning of the third clause of § 501.44 finds support in an examination of the circumstances which led to the enactment of the 1889 amendment. Obviously the amendment was adopted by the legislature in response to the situation created by Stahl v. Mitchell, 41 Minn. 325, 43 N. W. 385, which involved a matter of wide concern since the district court's decision affected the validity of the title to approximately 100 tracts of Minnesota land. In that case

---

[12]The 1905 revision changes are presumed not to have changed the pre-existing law. See, State ex rel. Decker v. Montague, 195 Minn. 278, 262 N. W. 684; State v. Stroschein, 99 Minn. 248, 109 N. W. 235; Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; § 645.05.

Blakely, a resident of Pennsylvania who owned approximately 100 tracts of land in Minnesota, conveyed all of his property to Mitchell, also a Pennsylvania resident, in trust for the benefit of his creditors. Mitchell accepted the appointment and acted as trustee until 1858, when a Pennsylvania court of common pleas accepted his resignation as trustee and discharged him. That court then appointed Campbell, also a Pennsylvania resident, as successor-trustee to Mitchell. Campbell accepted the appointment, qualified, and acted as trustee. In 1861, Campbell, as trustee, deeded the land in Ramsey County to Badger, and was discharged from his office of trustee by the Pennsylvania court in 1862. In 1885, Badger, who purchased the Ramsey County land from trustee Campbell, conveyed the land to plaintiff in the Stahl case. The Stahl action was brought against the widow and heirs at law of Blakely in 1885 to quiet title to the land in Ramsey County. The Ramsey County District Court, after first concluding that the orders of the Pennsylvania court had no extra-territorial effect on Minnesota real estate and could not, therefore, have empowered Campbell to convey the property, held that the defendants were, however, estopped from claiming title. Upon a subsequent finding that there was no basis for an estoppel, the district court granted defendant's motion for a new trial, whereupon plaintiff appealed.

Since Campbell, acting as a successor-trustee, had theretofore purported to sell approximately 100 pieces of Minnesota land, the question of the validity of the purchaser's title was a matter of wide concern. Before this court decided plaintiff's appeal, the problem was presented to the legislature for solution in the event of an adverse decision. The legislature enacted the original version of the third clause of § 501.44, thereby providing a method of dealing with the problem in case of an affirmance by this court of the decision of the district court. On July 24, 1889, however, this court held that as a matter of contract the provisions of the Pennsylvania law authorizing the Pennsylvania court to discharge the trustee originally named and to appoint his successor were deemed to be part of the original trust instrument and that, therefore, upon the appointment of Campbell, the title to the trust property vested in him. In view of that decision which was determinative of the controversy, the availability of the 1889 legislation by way of confirma-

tion of Campbell's acts in execution of the trust became academic.[13]

It is only reasonable to assume that the Stahl litigation presented the problem and the occasion which led to the 1889 amendment. It is significant that in the brief of the appellant in the Stahl case we have language concerning the court's power to confirm acts of one acting as trustee in the execution of a trust which is quite similar to that of the 1889 amendment which was enacted pending the appeal. It is also significant that the Stahl case situation, which gave rise to the original version of the third clause of § 501.44, was one in which there was a vacancy in the trust after the original trustee, Mitchell, had resigned, and the successor-trustee, Campbell, who was not the trustee originally named, nor appointed by a court of this state but rather appointed by a Pennsylvania court, in good faith and in execution of the trust sold the Minnesota property, *acting all the time under color of authority as trustee.*

If the original version of the third clause of § 501.44 was not intended to be limited to a situation such as that in the Stahl case, but was intended for the broad purposes appellant contends for, the legislature's use of such limiting language as "trustee *originally* named, or appointed by a court of *this state*" (italics supplied) would bring about the absurd result of serving no useful function. We cannot attribute to the legislature the intent to bring about such a result. § 645.17(1).

Moreover, were we to accept appellant's construction of the third clause of § 501.44, we would be holding that under our statutes a third party, not a trustee of a trust, may sue the trust estate for compensation for claimed services rendered on behalf of the trust, without first seeking relief against the trustee. Such a result would be contrary to established trust law (see, e. g., 3 Scott, Trusts [2 ed.] § 271a), and it would be unreasonable to assume that the legislature intended such a result. See, § 645.17(1).

Since, as before stated, there was no vacancy in the office of trustee

---

[13]Had the 1889 amendment not proved academic, difficult constitutional questions would have been presented if there had been an attempt to apply it. This court's determination that the successor-trustee, Campbell, had been validly appointed allowed avoidance of these constitutional questions.

in the instant case, and since all appellant's acts were as agent for the trustees and not under color of authority as trustee, appellant is not entitled to invoke the in rem jurisdiction of the district court under the third clause of § 501.44.

The trial court did not err in granting respondent's motion to dismiss appellant's petitions for lack of jurisdiction over the subject matter.

The orders of the trial court are affirmed.

Affirmed.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On June 6, 1958, the following opinion was filed:

PER CURIAM.

Appellant appeals from the clerk's taxation of costs in so far as it allows an item of $222.20 to the respondent for the printing of a supplemental record. Appellant asserts said supplemental record was wholly unnecessary for the proper presentation of the issues to this court.

We cannot agree that the supplemental record was unnecessary in its entirety. We find, however, that one-third of said supplemental record was wholly unnecessary to the appeal. No purpose will be served by making a detailed analysis of the supplemental record to show what portions were reasonably necessary and what portions were duplicative or otherwise unnecessary.

A deduction of $74.06 in the amount allowed for the supplemental record is ordered.

With the exception of said deduction of $74.06, the clerk's taxation of costs and disbursements is affirmed.

Affirmed.