# STATE, BY MILES LORD, ATTORNEY GENERAL, v. HAYDEN MILLER COMPANY AND OTHERS.

116 N. W. (2d) 535.

June 8, 1962—Nos. 38,304, 38,305.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *William J. Young* and *Paul J. Doerner,* Special Assistant Attorneys General, for appellant.

*Richard H. Plunkett,* for respondents.

MURPHY, JUSTICE.

This is an appeal from an order denying a new trial in a highway condemnation proceedings. Two tracts are involved, one is owned by the respondent Hayden Miller Company and the other is owned by the respondent Kruse Company. The appellant, State of Minnesota, claims that the verdicts are excessive and not justified by the evidence and that there was prejudicial error in the court's instructions and misconduct on the part of certain members of the jury.

It appears from the record that the property involved in these proceedings is located in an area where there has been considerable development and where the urban community of Rochester is reaching out beyond the city limits. The Hayden Miller property is located just north of 37th Street Northwest, which marks the northern limits of the city. The Kruse Company property is located south of 37th Street Northwest and is within the city limits. Trunk Highway No. 52 runs generally north and south and is adjacent to the western boundaries

of both tracts. The purpose of the taking was to widen the right-of-way of Trunk Highway No. 52, which is an important thoroughfare serving traffic between the city of Rochester and the metropolitan area of Minneapolis and St. Paul. By these proceedings 2.18 acres were taken from the Hayden Miller property while 1.52 acres were taken from the Kruse property.

Trunk Highway No. 52 has been a divided highway for some time, and prior to the taking involved in this action ramp or service roads had been established on each side of the highway. Because of industrial and residential development in this area and consequent increase in traffic, it was felt necessary to make certain changes at the point where Highway No. 52 is intersected by 37th Street Northwest. It appears that the overall improvement involved an extension of 37th Street Northwest across Highway No. 52 by an overpass and the construction of a new one-way ramp and a new two-way frontal road on the east side of the highway. The land involved here was taken for the construction of the new frontal road. The frontal road extends along the western boundary of the property which remains after the taking. The principal errors asserted to have occurred in these proceedings center upon the issue as to whether or not this frontal road resulted in a damage or benefit to the property which was not taken.

It is contended by the property owners that prior to the taking there was direct access from the Hayden Miller property to Highway No. 52 by Pennington Road, which is located about 1,500 feet north of 37th Street Northwest. It is also asserted that prior to the taking the Kruse Company had access to Highway No. 52 by 33rd Street Northwest, which is located at the south boundary of its property. It is the contention of the property owners that they have sustained damage as a result of the construction of the frontal road because of circuity of travel necessary to reach their property.

Because of the disposition we make of this appeal, it is not necessary for us to discuss the issue of damages. It is sufficient only to observe that the property is obviously of considerable potential value. The Kruse property is zoned commercial and the construction of a shopping center upon it had been under consideration. A large industrial plant employing 2,500 people is located west of Highway No. 52,

across from the property in question. At the time of the condemnation, 82 homes had been built on land adjoining the east side of the Kruse property. While the Hayden Miller land is acreage property, it appears that adjoining the tract on the east is an area platted for residential purposes.

■ While portions of the trial court's instructions correctly stated the law, we agree with the state that on the whole they were inconsistent and misleading. At one point the jury was correctly told that "[w]hen part of a tract is taken the owner is entitled to the difference between the market value. of the tract immediately before the taking and the market value of what is left after the taking, excluding from consideration general benefits and deducting from the difference special benefits."[1] At other places in the long and complicated instructions the rule was qualified and contradictory instructions were given. The difficulty arose from an attempt to explain and perhaps overrefine the rule as it applied to the conflicting claims of the parties. The owners contended that because of inconvenience of access the frontal road was a detriment to the property which should result in an increase in the award.[2] The state, on the other hand, claimed it was a special benefit to the property and a deduction should be made therefor. At various times during the instructions the jury was told that there was no special benefit from the frontal road; that if they found there was a special benefit they could not deduct it; that if they found there was damage to the property because of circuity of travel they could make an "additional allowance" therefor; the jury was later told that

---

[1]Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 457, 277 N. W. 394, 402, 124 A.L.R. 897; State, by Lord, v. Frisby, 260 Minn. 70, 108 N. W. (2d) 769; State, by Lord, v. Pahl, 254 Minn. 349, 95 N. W. (2d) 85; State, by Benson, v. Horman, 188 Minn. 252, 274 N. W. 4.

[2]In discussing the issue of damages which may be allowed for inconvenience sustained by reason of a taking, we said in Underwood v. Town Board of Empire, 217 Minn. 385, 389, 14 N. W. (2d) 459, 462:

"* * * It is well settled that, where part of the owner's land is taken, resulting inconvenience affecting the use and the enjoyment of the remainder is proper for consideration as affecting the market value of the land after the taking."

they could deduct special benefits from the award and later instructed to the contrary. There was language in the instructions from which the jury might well have gained the impression that such damages as they might find because of inconvenience of access could be added to the total award as an additional allowance. They might well have had the impression that it was proper for them to disregard any special element of benefit, but on the other hand to make an "additional allowance" for such special damage as they might find the owners sustained by reason of the construction.

■ Our authorities relating to the measure of damages in condemnation cases comprehend that the award shall be a single award for the entire damage for the land actually taken, including as well the harm resulting to the remainder because of the taking. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897. Such damage as the landowner may sustain by reason of inconvenience affecting the use and enjoyment of the remainder may be considered by the jury not as an independent item of loss but as an element which affects the market value of the remaining area.

■ In Zurko v. Gilquist, 241 Minn. 1, 5, 62 N. W. (2d) 351, 354, we said:

"In construing a charge as a whole, its adequacy in correctly setting forth controlling principles of law is to be measured by the meaning it reasonably conveys to the jurors who hear it only once and have no opportunity to examine it in written form."

In applying this test to the instructions before us, we conclude that they were not consistent and were likely to confuse and mislead the jury. Accordingly, a new trial must be granted. McNeill & Scott Co. v. G. N. Ry. Co. 156 Minn. 120, 127, 194 N. W. 614, 617.

■ It further appears that the record may be infected with a more serious error. Since we have determined that there must be a new trial, it is not necessary to discuss it at length. It is sufficient to observe that after the trial it came to the attention of the state that at least one and perhaps two jurors may have concealed bias in examination on voir dire and that at least one other juror had visited the property to make

an inspection of it during the course of the trial. Statements of at least six of the jurors indicate improper conduct during deliberations on the part of jurors acquainted with the parties or having independent information about the controversy and that certain members of the jury were influenced by the statements of said jurors during the deliberations.

In Schwartz v. Minneapolis Suburban Bus Co. 258 Minn. 325, 104 N. W. (2d) 301, we suggested that where it appears after the verdict is rendered that a juror's untruthful answer to questions put to him on voir dire examination may have prevented a fair trial, the better practice is to take the matter up with the trial court so that the juror may be examined in the presence of counsel for all parties and the court under the proper safeguards and a record made of the examination that will adequately present the matter to the supreme court on appeal.

On motion for a new trial the state here assigned as error:

"Misconduct of the jury in that one or more jurors stated that they saw the property and viewed it on their own after the trial had commenced, and that one of the jurors had communicated to some of the other jurors that he had not only seen the property but had talked the situation over with one of the owners of the property and knew what the history was and what the situation was on this condemnation; two of the jurors expressed a belief in the integrity of the owners because of their knowledge of said owners, which would make it embarrassing for them to participate in any verdict or amount of damages which was less than what they thought the owners had testified to and what they should receive, which was contrary and inconsistent with response given on voir dire examination by the trial court; that this conduct and these statements were made during the course of jury deliberations at the end of the trial."

In presenting the issue on the motion for a new trial, the state's attorney failed to produce the jurors for examination by the court as suggested in the Schwartz case. He did, however, ask the court for a continuance so that he could have at least one of them present for examination. The court denied the continuance and said that he would consider the issue

on the statements which had been secured as a result of the state's independent investigation.

From an examination of the statements and the record, we are of the view that the showing made was of sufficient substance and the issue of sufficient importance to require the trial court to grant a continuance for the purpose of conducting an examination of the alleged irregularities to determine whether a fair trial was had. From so much of the record as we have before us bearing upon the asserted falsity of answers on voir dire which might have concealed matters tending to establish the disqualification or incompetence of the jurors in question, we are satisfied that a full inquiry should have been conducted by the trial court.

■ We are not concerned here with the well-recognized principle that affidavits of a juror or any other person relating to what a juror has said will not be received to impeach the verdict where the facts sought to be shown inhere in the verdict itself. Bauer v. Kummer, 244 Minn. 488, 70 N. W. (2d) 273; Brown v. Duluth, S. S. & A. Ry. Co. 147 Minn. 167, 179 N. W. 1003; Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733; 14 Dunnell, Dig. (3 ed.) § 7109. The privilege which protects the deliberations of the jury from exposure does not extend to statements of jurors who may have on voir dire concealed prejudice or bias which would have disqualified them or to misconduct of a juror in making an independent inspection of the property in question contrary to the court's instructions. People ex rel. Nunns v. County Court, 188 App. Div. 424, 176 N. Y. S. 858; Clark v. United States, 289 U. S. 1, 53 S. Ct. 465, 77 L. ed. 993; Annotation, 48 A. L. R. (2d) 971.

Reversed and new trial granted.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On August 17, 1962, the following opinion was filed:

PER CURIAM.

Respondents appeal from the clerk's taxation of costs in the amount of $1,625.59. The principal objection is that the cost of printing the record in the sum of $889.35 and the printing of appellant's brief in the sum of $196.75 is excessive in that the record and brief contain

unnecessary and immaterial matter unrelated to the issues presented by the appeal.

From an examination of the record and brief we are led to the conclusion that much of the material contained in the record and brief was not necessary to a determination of the appeal. As we observed in In re Trust Created by Phillips, 252 Minn. 301, 314, 90 N. W. (2d) 522, 532, no purpose would be served by making a detailed analysis of the record and brief to show what portions were reasonably necessary and what portions were unnecessary and immaterial.

It is accordingly ordered that one-half of the printing charges above set forth may be deducted. With the exception of said deduction, the clerk's taxation of costs and disbursements is affirmed.