## HUISINGA FARMS, INC. v.
## FARM BUREAU MUTUAL INSURANCE COMPANY.

154 N. W. (2d) 406.

November 17, 1967—No. 40,581.

*Louis J. Moriarty* and *Irving M. Frisch,* for appellant.
*Quinlivan, Quinlivan & Williams,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order denying a motion for a new trial. Plaintiff unsuccessfully sought to recover for damages to real and personal property under extended coverage provisions of two insurance policies issued to it by defendant insurance company. Plaintiff asserts that it is entitled to a new trial because of errors in the court's instructions.

From the record it appears that plaintiff, Huisinga Farms, Inc., operates a turkey farm on which was located a concrete-block turkey house. Defendant, Farm Bureau Mutual Insurance Company, issued one policy on the building and another policy insuring personal property used in connection with the operation of the business. The turkey house, which is of cinder-block construction with corrugated steel roofing, was built in 1958. The structure was 40 by 400 feet, was 10 feet high, and had a

6-foot foundation. On March 17, 1965, there occurred an unusually severe blizzard with exceedingly strong northwest winds, accompanied by snow accumulation up to 4 feet in some places, with drifts rising as high as the eaves of the turkey house. It was agreed that the building was in good condition prior to the time of the storm. Roger Huisinga, an officer of plaintiff company, testified that the building was standing at 5:30 p. m. on March 17 when he tended the turkeys housed in it. At 7 a. m. the following day, he observed that part of the roof had collapsed. Defendant's claims adjuster, who inspected the premises on March 21, described the damages by saying:

"Well, the primary place where the failure had occurred seemed to be on the south side and at approximately the center, and it was, I would say, completely collapsed in an area of at least 50 feet, and then it extended out up to the regular level of the roof, and I would say that it covered at least a hundred feet of area that was damaged. And then the ends of the roof appeared to be fully intact yet, the extra hundred feet on each end."

About 15 feet from the north wall of the turkey house was a grove of trees. Although Mr. Huisinga did not observe this on the morning of the 18th, two days later he noticed that one of the trees was leaning against the wall and one of its branches was actually hanging inside the turkey house. The insurance adjuster did not see this on his inspection.

Defendant insurance company denied liability, contending that the damage was caused by a "snowstorm" within the exclusionary provisions of the policy. The exclusionary provision contained in each policy, so far as applicable here, provides:

"* * * This Company shall not be liable for loss caused directly or indirectly by * * * snowstorm * * * whether driven by wind or not."

There was evidence by plaintiff that the building was adequately constructed and that the stress of the wind and the tree limb against the roof was the cause of the collapse. The evidence of defendant company included the testimony of a civil engineer who said that it was the weight of the snow which caused the inadequately constructed roof to collapse. In describing the manner in which the roof was constructed, this witness

pointed out that it was "able to carry up to probably ten pounds per square foot," while roofs constructed in one metropolitan area of the state are designed to sustain a minimum load of 40 pounds per square foot. It appeared from the evidence that at places on the roof the weight of the snow exceeded the latter figure.

Plaintiff contends that the trial court's instructions to the jury were erroneous in that he defined a "snowstorm" as "falling snow driven by a high wind," and that the jury was given to understand that a windstorm, accompanied by snow, would be within the exclusionary provisions of the policies. We have examined the instructions in light of the record, and it seems to us that the trial court attempted, as best he could, to explain the provisions of the policies to the jury and, in doing so, correctly informed them of the windstorm coverage under the extended coverage provisions of the policies. He correctly told the jury that the insurance company, under the provisions of its policies, was not liable for loss or damage caused by a snowstorm, whether "driven by a high wind" or not. Obviously, the trial court recognized that the evidence showed that the storm combined elements of both a windstorm and a snowstorm. There was a severe wind accompanied by a heavy fall of snow. The jury was told that there would be liability if they found that the windstorm was the direct cause of the collapse, even though other causes may have contributed to it. They were also told that there would not be liability if they found that the direct cause of the collapse was the excessive weight of the snow upon the poorly constructed roof. In instructing the jury, the trial court apparently had in mind Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co. 239 Minn. 198, 58 N. W. (2d) 614, in which case we adopted the rule that a windstorm is a wind capable of damaging the insured property either by its own unaided action or by projecting some object against it.

In attempting to fairly instruct the jury as to the fundamental and controlling principles of law as they related to the issues presented by the evidence, the trial court said:

"* * * If the windstorm was a direct cause of weakening the building and the building collapsed from the weight of accumulated snow, and which collapse would not have taken place had not the structure

first been weakened by wind, then you may find the windstorm was a direct cause of the damage. The only weakening—well, you will have to consider the evidence as to what evidence there was as to what may have caused the weakening of the structure. If you find that if the windstorm was a direct cause of any weakening of the building and the building collapsed from the weight of accumulated snow, which collapse would not have taken place had not the structure first been weakened by wind, then you may find that the windstorm was a direct cause of damage."

The trial court told the jury, on the other hand, that if the collapse resulted from the weight of the snow piled upon the roof, the provisions of the policy would not cover the loss, adding, "if you find that there was snow on the roof of the building and that this snow together with the design and construction of the roof of this building was the sole direct cause of the collapse of the building, then the plaintiff cannot recover."

Obviously, the jury resolved the fact question as to cause by determining that the collapse was due to the excessive weight of the snow upon a defective roof rather than to the violence of the windstorm. It is our conclusion that, when the charge to the jury is examined as a whole, the jury was given a proper understanding of the fundamental principles of law involved. It is well established that if the instructions, as a whole, convey to the jury a correct statement of the applicable law, they will not be disturbed on appeal simply because a part taken out of context, when considered alone, may appear to convey a different meaning. Shastid v. Shue, 247 Minn. 314, 77 N. W. (2d) 273; State, by Lord, v. Hayden Miller Co. 263 Minn. 29, 116 N. W. (2d) 535; Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336; 14 Dunnell, Dig. (3 ed.) § 7165. While the record might well have sustained a finding to the contrary, it is not the function of an appellate court to interfere with a jury's determination of a fact question.

Affirmed.