## PURNELL v. NICHOL.

### Opinion delivered April 4, 1927.

1. APPEARANCE — FILING ANSWER. — Where the defendant in a divorce suit filed an answer when no summons had been issued, she thereby entered her appearance and could not assert that the decree was invalid for want of jurisdiction of her person.

2. APPEARANCE—WAIVER OF PROCESS.—Both the issuance and service of a summons are waived by a general appearance.

3. COURTS—CONSENT TO JURISDICTION.—Where the court has jurisdiction over the subject-matter, jurisdiction of the parties may be acquired by consent.

4. PROCESS—WAIVER OF OBJECTION.—Defects of jurisdiction arising from irregularities in the commencement of proceedings, defective process or even the absence of process may be waived by a failure to make seasonable objection.

5. APPEARANCE—JURISDICTION.—A court acquires jurisdiction over the person of plaintiff whenever he appears and invokes the power or action of the court in any manner, and when the defendant voluntarily appears in any case, and, without objection, proceeds, the court thereby acquires jurisdiction of his person, whether any summons was issued or served or not.

6. DIVORCE—INSUFFICIENCY OF ALLEGATIONS OF COMPLAINT.—A decree of divorce will not be vacated merely because the allegations of the complaint did not warrant it, where the testimony heard was not preserved but presumably supported the decree.

7. DIVORCE—EVIDENCE.—On a bill to review a decree of divorce, the court's finding on conflicting evidence against a claim of fraud practiced on the court *held* not against the preponderance of the evidence.

Appeal from Jefferson Chancery Court; *H. R. Lucas*, Chancellor; affirmed.

*Martin, Wootton & Martin,* for appellant.

MEHAFFY, J.  The appellant, who was the plaintiff below, and D. T. Purnell were married in August, 1923, in Texas, and came back to Arkansas, where they lived together a while at Pine Bluff, and, on the 22d day of March, 1924, the chancery court of Jefferson County granted D. T. Purnell a decree of divorce, and D. T. Purnell paid her, at the time of the divorce, $3,500.  D. T. Purnell died on September 14, 1924.  When he died the appraisement showed the value of his estate to be approximately $60,000.  On January 6, 1925, the appellant filed in the Jefferson Chancery Court a bill of review, in which she sought to have the decree of divorce vacated.  The following, omitting the caption, is her complaint:

She alleged that the appellees, children and grandchildren of her said husband, combined and confederated for the purpose of alienating his affections from appellant and causing their separation and divorce, to the end that she might not share in his estate; that, being among strangers and surrounded by his relatives, she was so importuned and threatened by her husband that she was compelled to agree to his demands.  She alleged that her husband was worth approximately $100,000, but that he solemnly stated to her his entire estate was worth not above $11,000, and proposed to pay her the sum of $3,500, provided she would permit him to get a divorce without defense; that she agreed thereto, induced by her miserable and unhappy condition, and by his said representation as to the value of his estate, and, on the same day, the said D. T. Purnell filed his bill seeking a divorce, and that a decree was rendered, granting a divorce on the same day the bill was filed; that no summons was ever served upon her, but her attorney filed an answer for her; that the case was submitted and decided without appellant being present and without any testimony being taken, and upon its being represented to the court that such decree was agreeable to her and her said husband; that fraud and imposition were practiced upon her and her solicitor by the said

D. T. Purnell assuring her and her solicitor that the entire value. of his estate did not exceed the sum of $11,-000, which statement, she alleges, was knowingly false and fraudulent upon the part of her said husband; that she accepted said statement, relying thereon, and believing it to be true, unaware of the falsity thereof, until after the death of her said husband, when it turned out he owned a large and valuable estate; that said judgment and decree were obtained by fraudulent imposition upon the court as well as upon her; that by said fraud she has been deprived of her dower and homestead rights in the estate of her husband. Prayer that the divorce decree be set aside and her dower and homestead interest in said estate be decreed.

She afterwards filed an amended complaint, setting out the misrepresentation in greater detail, and charging that fraud was practiced on her and upon the court.

The defendants answered, denying all the material allegations of the complaint.

Adelia Clement testified that she lived in Hot Springs, Arkansas, and that she was the mother of appellant; that her daughter became engaged to be married to D. T. Purnell, and was afterwards married in Texas. Witness was present at the wedding. She testified that they were to have been married earlier, but Purnell stated, on account of the opposition of his children, he could not come to Hot Springs. Later he wrote to her daughter to come to Texas, and she and her daughter went, and they were married in Texas. They afterwards returned to Pine Bluff, Arkansas, where they lived for about six months before their separation. After the separation, Purnell visited witness' daughter again and stated that he was going to remarry her. He said he was going to correspond with her, but the only way he could do it was to secure a postoffice box, because his children got all his mail. Witness' daughter received a telephone message from Mrs. Carter, telling her that Purnell was very ill, and wanted to see her, and she went to see him; that she had seen letters from Purnell to her daughter, and

that the letters were destroyed.    After their marriage, when they returned to Arkansas, Purnell went to Pine Bluff and her daughter went to Hot Springs, and later Purnell 'phoned for her to come, and she went to Pine Bluff.    She said Purnell had two orange groves in Texas. She testified that Purnell gave her daughter an automobile for a wedding present.

The appellant testified, in substance, that she was 37 years old; had lived in Hot Springs nearly all her life, and she met Purnell there about three months before their marriage; that they were married in August, 1923, at Edinburg, Texas; that she was introduced to Purnell at the Great Northern Hotel by a friend from St. Louis; that their marriage was originally set for September, 1923, in Hot Springs, but that Purnell wrote to her, stating that they would have to postpone the wedding because his daughter was threatening to kill herself, and he was afraid she would kill him.    He wrote her from Laferia, Texas, asking her to come, and she and her mother went out there, and she was married; that she and Purnell lived together about seven months, about four months of which was in Pine Bluff; that his family never seemed to like her; she never could have the automobile for her own use; that there were many little things and disagreements; that they got along together fine in Texas; never had any trouble until they got to Pine Bluff, and then it was over the children.    She said that Purnell had about fifteen relatives, and they all turned against her; that, one Sunday, she and Purnell were going to church, and that Purnell's son and Purnell drove off and left her ready, and she did not get to go.    She finally decided they could not get along, and he asked her what she would take, and she told him she did not know, and he advised her to go see Judge Toney, his attorney.    Purnell said he would give me one-third of his entire estate.    Purnell offered me an automobile, and I told him I did not want to leave him.    Afterwards, at his suggestion, I went to see Judge Toney again.    I was being urged on, and then I had a talk with Mr. DeLay, who afterwards represented me.

Mr. DeLay found that a lot of property was listed in the name of Purnell, but Toney assured me and Mr. DeLay that this land had been conveyed to Purnell's children before the marriage, but the deeds had not been recorded. Mr. DeLay came out to see me after I refused to compromise. I did not know what to do. I went to see Judge Toney again, and he told me that my husband had made his estate to his children and he would give me one-third of what he had. I told him that was all right. I was paid $3,500, of which $200 went to my attorney." She testified that she believed, at the time, that this was one-third of the estate; that she was never served with summons, never present at court, nor testified; that they never had any trouble at all except on account of the children. He promised to leave there and go to California. "Mr. Purnell and a notary public came out and gave me a paper to sign, and I refused to sign because I thought it was a stock of goods, but it was a warranty deed. Mr. Purnell talked about moving to Florida. I never knew that he owned more property than he told me until I read his will in the paper, and I knew then that I had not received one-third of his estate."

Witness testified that she had been divorced twice before; that both her husbands got divorces from her, but that she got no alimony from either of them. "Mr. Purnell wrote me letters during the time we were separated. We lived in Pine Bluff right in the same block with practically all the family. We took our meals with his daughter, and she told me I could not stay there, she did not want me. We took some meals with his son, Sherman. I signed some papers at the bank before the divorce was rendered. I did not just understand it. Sometimes I ran little bills, when I could not make the money go far enough, but I always paid them as soon as I got time. At the time we separated my wardrobe bills did not amount to $1,000. I got a dress or two after the separation, but the divorce had not been granted. I had signed the papers, and I called up Mr. DeLay, and, after talking to him, I returned the dresses. When we were

discussing the settlement and a divorce Mr. Purnell and
Mr. Toney had offered me, I wanted to see if it was all
right. I believed what they told me, and took the money,
and did not know that there was any fraud until after he
died. After the divorce I went to New York and stayed
at the Times Square Hotel.''

Witness testified to a good many things about the
disagreements being caused by the children, and that, but
for them, they would have got along all right, and that
she thought she was getting one-third of his property, and
that that was the reason she settled.

Mr. DeLay testified, in substance, that he repre-
sented Mrs. Purnell, and that he went to see Mr. Toney,
who represented Mr. Purnell, and got the impression that
$11,000 was all that Mr. Purnell owned; that he did not
know what his holdings were; that he was told that Mr.
Hunt drew the deeds and took the acknowledgments for
Mr. Purnell when he deeded it to his children, and that he
thought it was all right, relying on the statements of Mr.
Purnell and Mr. Toney. Mr. Toney's stenographer pre-
pared all the writings that were prepared, with the under-
standing that the settlement was to be upon a basis of one-
third of his holdings; that they went into court and pre-
sented the pleadings and decree to Judge Elliott, and
that he was positive that no witnesses were examined, no
witnesses were sworn, nor any testimony taken. The
abstract copy furnished showed what purported to be Mr.
Purnell's holdings. He had a memorandum before the
settlement was made. He did not consult Mr. Hunt with
reference to the matter. He said he could have seen Mr.
Hunt if he had made up his mind that the statements of
Toney and Purnell were not true. He is positive that no
witnesses were sworn; knows that he was not, but he
was interrogated by the court; could not say what Pur-
nell or his son did or what testimony they gave, as he was
not present, does not recall that the bill was filed before
the decree.

There was then offered in evidence the will of Pur-
nell, and also offered inventory filed by the executor,

which showed the estate to be worth a little more than $59,000.

Judge Elliott testified that "Toney came into court with some witnesses, and Mr. DeLay was present representing Mrs. Purnell, and I asked about the property rights set out in the decree. I asked Mr. DeLay if he represented the defendant and if she had read the decree and knew the property rights set out in the decree, and he said it was entirely satisfactory as far as the property was concerned. I told them I would hear the testimony, and D. T. Purnell and Sherman Purnell and, I think, a third witness, testified. I always put on the complaint 'cruel treatment.' That was the ground of divorce, and put 'witnesses, D. T. Purnell and Sherman Purnell.' I am not sure about the third witness, but I think there was a third. I administered the oaths to Mr. Purnell and his son. There were present Mr. DeLay, Mr. Toney, Mr. Purnell and Sherman Purnell, and I am not sure about the third witness. The allegations were borne out, otherwise I would not have granted the decree. They testified that Mrs. Purnell was abusive and treated him with neglect. No record was made of the testimony. The papers had been filed in the clerk's office. I never hear a case until the papers have been filed."

H. K. Toney testified about preparing the papers and the witnesses testifying and the agreement as to the property, and as to telling Mr. DeLay about what he thought the property was worth.

Sherman Purnell testified about the divorce, and that he was sworn when the decree was granted.

S. J. Hunt then testified that he had written some deeds and taken some acknowledgments for Mr. Purnell.

Two or three other witnesses testified about Mrs. Purnell's visit after Mr. Purnell took sick. The above is sufficient, we think, to show what the issues are.

Appellant's first contention is that the court never acquired jurisdiction of the divorce action, and she calls attention to § 1049 of Crawford & Moses' Digest, which provides that an action is commenced when a complaint

is filed and summons issued thereon. An action is not commenced until the complaint is filed and summons issued, but we think that this does not mean that the court cannot acquire jurisdiction over the person any other way. He also calls attention to 15 Corpus Juris, 797, to the effect that, where the mode of acquiring jurisdiction is provided by statute, compliance therewith is essential or the proceedings would be a nullity. This is true where the other party does not consent to the proceedings or where he does not appear. But it has been many times held that both the issuing and the serving of a summons may be waived, and it is stated in Corpus Juris: "The general rule is that a general appearance confers jurisdiction *in personam* over the party so appearing, but that a special appearance does not." 15 C. J. 801.

It has been often held that, where the court has jurisdiction over the subject-matter, jurisdiction over the particular action may be conferred by consent; and, where jurisdiction has attached and the cause of action or subject-matter is legally and properly within the power and cognizance of the court, it may proceed on consent of parties with reference to matters before it. It seems to be a general rule that, where the court has jurisdiction over the subject-matter and the cause of action, jurisdiction of both the plaintiff and defendant may be acquired by consent of the parties. This court has held that, even where a court would not have jurisdiction, yet where the persons entered their appearance and submitted themselves to the tribunal, they will be held to have appeared there for the purpose of submitting themselves to the county court as a court of arbitration, and, having elected to do this, they cannot now object that the county court was without jurisdiction in the matter. Having elected to submit themselves to the jurisdiction of the tribunal provided by the statutes, and having taken an appeal in accordance with the provisions of the statute, they must abide the result of their own voluntary action. *Morgan Engineering Co.* v. *Cache River Drain. Dist.,* 115 Ark. 437, 172 S. W. 1020.

"It is well established, as a general rule, that, where the court has jurisdiction over the subject-matter or cause of action, jurisdiction over the person of the parties may be conferred by consent, unless, of course, such a submission to jurisdiction would be violative of some statute. Accordingly, defects of jurisdiction arising from irregularities in the commencement of the proceedings, defective process, or even the absence of pro cess, may be waived by a failure to make seasonable objection." 15 C. J. 808, § 104.

"Broadly stated, any action on the part of the defendant, except to object to the jurisdiction over his person, which recognizes the case as in court, will constitute a general appearance." 4 C. J. 1333.

A court acquires jurisdiction over the person of the plaintiff whenever the plaintiff appears and invokes the power or action of the court in any manner, and when the defendant voluntarily appears in any case, and, without objection, proceeds, the court thereby acquires jurisdiction over his person, whether any summons was issued or served or not. This court recently said: "While a suit upon the note and upon the contract of sale are entirely separate and distinct causes of action, the effect of defendant's answering the complaint and defending the action entered its appearance." *Bernard Mfg. Co.* v. *McRae Model Pharmacy, Inc.,* 171 Ark. 978, 287 S. W. 187.

In the above case the plaintiff proceeded on a different cause of action altogether, and on it no summons was ever issued, but the defendant filed an answer, and the court held that he thereby entered his appearance. In another recent case the court said: "We do not think any error was committed in permitting appellee to amend his complaint to allege a greater damage than that claimed in the original complaint. It is true there was no personal service, but appellants voluntarily filed an answer to the original complaint, and this action entered their appearance as completely as if they had personally been served with process." *Purse Bros.* v. *Watkins,* 171 Ark. 464, 287 S. W. 533.

We therefore conclude that, when Mrs. Purnell, by her attorney, filed an answer, she entered her appearance and thereby gave the court jurisdiction as completely as it would have had by issuing summons and serving on the defendant.

Appellant's next contention is that the allegations of the complaint did not warrant the decree. This is probably true, but it contained a sufficient allegation to give the court jurisdiction, and the court had jurisdiction of the person of the plaintiff and defendant, and, according to the testimony of the chancellor who tried the case, and other witnesses, the court took testimony, and there is no record preserving the testimony or showing what the testimony was, and the presumption therefore is that there was sufficient evidence introduced to justify the chancellor in granting the decree. The mere fact that that the complaint was defective did not prevent the plaintiff from introducing proof sufficient to justify the court in granting a decree, and the presumption is that this was done.

Appellant's next contention is fraud practiced upon the court and the appellant in procuring judgment. The evidence is conflicting on this issue, and we cannot say that the finding of the chancellor was against the preponderance of the evidence. The judge who tried the case testified that he swore the witnesses and took their testimony, and he is corroborated by one or two other witnesses.

There is some evidence that no proof was taken, but, as we have said, we think the preponderance of the evidence shows that evidence was taken. This answers the next contention of the appellant, which is that the decree was rendered without hearing the evidence.

After a careful examination of the record, our conclusion is that the defendant voluntarily appeared, thereby giving the court jurisdiction, and that the presumption is that the evidence taken by the court supplied any defect that there may have been in the complaint, and that, on the question of fraud, and also the question

of the decree being rendered without hearing evidence, the testimony is conflicting, and, since the finding of the chancellor was not against the preponderance of the evidence, his finding should be sustained, and the decree is therefore affirmed.