HENLINE, APPELLEE, v. WILSON, APPELLANT.*

(No. 4938—Decided February 3, 1960.)

*Motion to certify the record overruled, May 11, 1960.

*Mr. Raymond J. McGowan* and *Mr. William R. Ferguson,* for appellee.

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

HUNSICKER, J. This is an appeal on questions of law from a money judgment entered on the verdict of a jury.

Charles Henline, the appellee herein, a long-distance truck driver for Roadway Express, Inc., was the owner of an automobile which, on April 10, 1958, was being operated by his son-in-law, George H. Wilson, the appellant herein. Charles Henline was at that time riding in the front seat of his own automobile, next to his son-in-law, the driver thereof. No other person was in the automobile, which was then being driven east on East South Street, in Akron, Ohio, near its intersection with Johnson Street.

As Wilson, who was driving about 50 miles an hour, drove over a railroad crossing near this intersection, he turned suddenly to the left, toward Johnson Street, lost control of the motor vehicle, and crashed into a telephone pole. The result of this act on the part of Wilson was severe injury to his father-in-law, and the almost total demolition of the automobile.

Henline and Wilson had, on the evening prior to the accident, left the Henline home, where Wilson and his wife were visiting, in order to drive another long-distance truck driver to the Roadway Express terminal located on Archwood Avenue. From there, in the company of another party, they went to a cafe. At this cafe, Henline and Wilson, who was only 20 years of age, drank a "shot" of whiskey. Wilson left this cafe to go to the Henline home to report to Wilson's wife, Henline's daughter, and to take her some "onion rings." Wilson then, driving Henline's automobile, returned to the cafe, drank another "shot" of whiskey; then Wilson, Henline and the other party left for another cafe. Henline said at each cafe he had two drinks of whiskey with ginger ale. Wilson said he had two drinks of whiskey with ginger ale at each cafe and, in addition, a bottle of beer at the second cafe.

Wilson, who had the keys to Henline's automobile when they left the cafe, got in the driver's seat of the Henline automobile, and Henline took the seat next to him. Henline said they were going 40 to 45 miles per hour on East South Street. Wilson said he was traveling 50 miles per hour. Only once did Henline say anything as to Wilson's driving, while going toward the point where the accident occurred, and that was to call his attention to a red light at the intersection of East South and Grant Streets.

Wilson said he was not intoxicated but "felt his drinks" a little. Henline said that he, Henline, was in possession of all his mental and physical faculties as they left the second cafe to go to Henline's home. The time that elapsed from entering the first cafe until the accident was about 3 to 3½ hours.

In this appeal from the judgment in favor of Henline, counsel for Wilson claim that the trial court erred in the following respects:

In overruling defendant's motion to withdraw a juror and declare a mistrial because of the misconduct of plaintiff's counsel in the nature and extent of his *voir dire* examination; in overruling defendant's motions for a directed verdict at the conclusion of plaintiff's evidence and all the evidence, or, in the alternative, to enter final judgment for defendant; in withdrawing from the consideration of the jury, defendant's defense of assumption of risk, in refusing to give to the jury before argument defendant's special request No. 1 on the subject of assumption of risk, and in refusing to include in the general charge a charge on the subject of assumption of risk; in giving to the jury before argument plaintiff's special request No. 1; in the general charge to the jury; in overruling the motion of defendant for final judgment notwithstanding the verdict of the jury and the judgment entered thereon; and in overruling the motion of defendant for a new trial.

Appellant claims also that the verdict of the jury and the judgment entered thereon are not sustained by sufficient evidence and are contrary to the evidence and law.

The questions that this court should consider and discuss in this case are: first, Was Henline, while riding in his own automobile, a guest under the guest statute, or was he a pas-

senger?, second, Is the doctrine of assumption of risk in this case?, third, Must the negligence, if any, of Wilson be imputed to Henline?

If Henline was a "guest" in his own automobile, then further discussion of this case must cease, because it is conceded by counsel for Henline that neither the allegations of the petition nor the proof establish a claim under the guest statute of Ohio. That statute—Section 4515.02, Revised Code—reads as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

If the status of Henline at the time of the injury comes within any classification other than "guest," Wilson is liable for any negligence of which he may have been guilty, if such negligence was the proximate cause of the injuries suffered by Henline. The "guest statute" must be strictly construed, since it is in derogation of the common law. *Miller* v. *Fairley*, 141 Ohio St., 327, 48 N. E. (2d), 217.

Judge Taft, in *Lombardo* v. *De Shance, a Minor*, 167 Ohio St., 431, at page 434, 149 N. E. (2d), 914, 66 A. L. R. (2d), 1313, said, with respect to the judicial definitions of "guest" and "passenger" under this act, that:

"Heretofore, some of the opinions of this court interpreting the Ohio guest statute have used the 'designation of "passenger" as one carried for hire or reward, as distinguished from "guest" as one carried gratuitously.' The result has been some tendency toward confusion because of use of those words instead of referring to the statutory words, 'guest * * * transported without payment therefor' (see *Vest, a Minor*, v. *Kramer*, 158 Ohio St., 78, 84, 87, 93, 107 N. E. [2d], 105), and also because of the necessity of squeezing into the definition of 'passenger' *paying guests* as well as those for whose transportation nothing has been paid and who are not really guests at all."

The apparent confusion found in the cases which seek to define the words "guest" and "passenger," as used in the "guest statute," comes about largely in an attempt to be so specific in framing a definition that a new and unusual situation, such as we find in the instant case or as arose in the *Lombardo* v. *De Shance case, supra,* requires a reappraisal of the specific definition, and a return to an application of the rule that a case must be read in the light of the facts of such case, and not with the view that there is established, by a given definition, a rule applicable under all circumstances.

In the instant case there is found a new and unusual circumstance not found in any reported Ohio case, and not many similar situations are found in the reported opinions in states having "guest statutes" similar to our statute.

We shall look to cases with similar factual situations from other jurisdictions for the reasoning they adopt in solving this problem. All the Ohio cases that we have read indicate that a "guest" is a person riding in an automobile as a recipient of the hospitality of the owner or driver. There is no evidence that Wilson was the agent of Henline, the owner, and if anyone in the instant case was the recipient of hospitality, it was Wilson, the driver. He was some distance from his home, his automobile and his wife; the natural situation would be that he was to become the guest of Henline for the return to the Henline home.

In *Phelps, Trustee,* v. *Benson,* 252 Minn., 457, 90 N. W. (2d), 533, where the Supreme Court of Minnesota interpreted the "guest statute" of South Dakota, emphasis (in a factual situation similar to the one we have before us) was placed upon a statutory requirement that statutes in derogation of the common law must be "liberally construed with a view to effect its objects and to promote justice." The Supreme Court of Minnesota in that case analyzed all the then cases of a similar nature, and determined that the South Dakota statute, when properly interpreted, required a determination in that case that the owner of an automobile, injured when the vehicle overturned, must be classed as a "guest" when riding in his own motor car that was then being driven by a third person. The Minnesota court, in its opinion, indicated that it would similarly determine this

question of "guest" status if the Minnesota statute were involved.

If we were to adopt a liberal construction of our Ohio guest statute, it is very probable that we should reach the same conclusion as the court in the *Phelps case, supra,* based upon an interpretation that the statute was enacted to prevent recovery when the operator of the vehicle was guilty of only ordinary negligence, since the owner is really enjoying the hospitality of the driver. We are, however, a strict-construction state, similar to the states where it has been held that the owner-rider may, under certain circumstances, be a "passenger."

The Ohio "guest" statute has been interpreted in a situation similar to the instant case in *Naphtali* v. *Lafazan,* 8 App. Div. (2d), 22, 186 N. Y. Supp. (2d), 1010. In that case the owner-rider-husband sued the driver to recover for injuries sustained when the automobile in which they were riding, on an Ohio highway, left the highway and overturned. That case determined that the owner-rider was not a guest under the Ohio statute. The reason for such a conclusion was largely the finding that there was a "payment" for the ride, within the terms of the Ohio law, since a benefit was being conferred upon the driver by the owner-rider. That case also reviewed all the principal Ohio case law on the subject under discussion in the instant case, and concluded that there was nothing in the Ohio guest statute which prevented an owner-rider from being considered a passenger in his own automobile.

Courts in other states, where the rule of strict construction applies to statutes in derogation of the common law, have reached the same conclusion as the *Naphtali* v. *Lafazan case, supra,* on the basis of a guest law similar to the Ohio statute.

The cases, on the question herein, most frequently cited are: *Gledhill, Admx.,* v. *Connecticut Co.,* 121 Conn., 102, 183 A., 379; and *Lorch* v. *Eglin* (Pennsylvania court interpreting Virginia statute), 369 Penn., 314, 85 A. (2d), 841. Other well-considered cases are: *Ray* v. *Hanisch,* 147 Cal. App. (2d), 742, 306 P. (2d), 30; and *Ahlgren* v. *Ahlgren,* 152 Cal. App. (2d), 733, 313 P. (2d), 88.

The annotation "Guest statute as applicable to member of family riding in car driven by another member," 2 A. L. R. (2d), 932, says, at page 933:

"According to the few cases in which this question was directly in issue, the general rule is that the mere fact that the injured occupant of an automobile stands in a family relation to its driver does not exclude the occupant from being a guest nor does it automatically make him one regardless of circumstances. * * *''

It may be argued, and we think with logic, that the situation in our case here might be fitted into the definition found in the third paragraph of the syllabus in the case of *Hasbrook* v. *Wingate*, 152 Ohio St., 50, 87 N. E. (2d), 87, 10 A. L. R. (2d), 1342. To fit the instant case to that definition we must say that the rider-owner, Henline, accompanied the driver, Wilson, at the instance of Wilson, for the purpose of having the rider, Henline, render a benefit or service to Wilson on a trip—that is, the return to the Henline home for Wilson to get his own automobile and his wife, so that both Wilsons could return to their own home. It would then be said that the attainment of this objective of Wilson makes Henline a "passenger" and not a "guest."

Henline was furnishing the use of his automobile to attain an object sought by both parties. It was necessary that Wilson have some manner of travel, either public or private, if he was to get to his destination. Henline was conferring a benefit upon Wilson and providing for him transportation and paying all the expense incident thereto. In that sense, there was a "payment" by Henline to Wilson within the meaning of Section 4515.02, Revised Code. It has been determined in Ohio that payment need not be in money.

In *Duncan* v. *Hutchinson*, 139 Ohio St., 185, 39 N. E. (2d), 140, the court said, at pages 189 and 190:

"It is not necessary that payment for such transportation be made in money. It is sufficient if the passenger by his presence in the automobile or by service or assistance to the operator in making the trip, compensates the operator or the owner in a material or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses. It has generally been held that payment for transportation is made: (1) When the carriage is of a prospective purchaser of property which the automobile host has for sale and the trip is made for the purpose of inducing a sale * * *; (2) when the au-

tomobile host has a financial or business interest in the time or service of the passenger and the purpose of the transportation is to take the passenger to or from his place of employment * * *; (3) when the passenger is making the trip to assist the automobile host in arriving at the latter's destination or to perform some service for the latter's benefit * * *; (4) when a substantial or tangible benefit is conferred upon the automobile host in lieu of and for the transportation * * *; (5) when the automobile host and passenger embark on a joint adventure or enterprise in which each is equally or similarly interested, and which adventure or enterprise is of such moment and character as to indicate that payment is the motivating influence in providing the transportation * * *; (6) when the passenger is an involuntary occupant of the automobile * * *; and (7) when the compensation is paid by a third person * * *."

In *Hasbrook* v. *Wingate, supra,* at pages 56 and 57, the court said:

"The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a guest; but if his carriage tends to promote the mutual interest of both himself and driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a passenger and not a guest."

In the instant case, all the tests there laid down to distinguish between a passenger and guest have been met. We determine that under the facts of this case Henline was not a guest, within the meaning of our Ohio guest statute.

We next consider whether Wilson, the appellant, was entitled to an instruction to the jury on the question of assumption of risk. Both Henline and Wilson admit that, over a period of 3 to 3½ hours, they each had four drinks of whiskey and, in addition, Wilson had a bottle of beer. There is no evidence that either one was intoxicated, although Wilson said he "felt" his

drinks a little. The police did not charge Wilson with operating the automobile while under the influence of intoxicating liquor, but, on the contrary, he was charged with failure to have the automobile under control. The report prepared when Henline was admitted to the hospital did not indicate that he had alcohol on his breath, although there was a space for such fact on the printed admission record.

There is nothing to indicate that Henline knew the amount of whiskey Wilson drank, for his testimony indicated that he believed Wilson drank only beer. Wilson's driving was not unusual, except as to the speed with which he crossed the railroad tracks. The evidence shows that only once did Henline make a remark about Wilson's driving, and that was to call his attention to a traffic light that was red. On that one instance, Wilson admitted he was driving fast as he approached the light, but stopped at the intersection in obedience to the signal.

Those facts do not suggest to this court a situation that requires the application of the rule on assumption of risk. Everyone who rides with another in a motor vehicle assumes, as a practical matter, a risk, and we, as riders, have faith in the vehicle, tires, and the driver. If we did not have such faith, none of us would drive or ride in an automobile. This display of faith on our part, however, never gives rise to the application of the legal doctrine of assumption of risk.

"1. In the absence of evidence that a person knew of a danger or that the danger was so obvious that he must be taken to have known of it, it cannot be held that such person assumed the risk of injury from such danger." *Ricks* v. *Jackson*, 169 Ohio St., 254, 159 N. E. (2d), 225.

Before assumption of risk "may be applied to a given set of facts, there must be evidence from which reasonable persons could reach different conclusions: First, that the injured person accepted a danger which was clearly understood and, second, that he had a foresight of the consequences and a readiness to accept them." *Mudrich, a Minor,* v. *Standard Oil Co.*, 87 Ohio App., 8, at page 17, 86 N. E. (2d), 324.

There is no evidence in the bill of exceptions that meets this standard. The trial court did not commit error prejudicial to the substantial rights of the appellant when it refused to give an instruction on the doctrine of assumption of risk.

The doctrine of imputed negligence is not a part of the substantive law of this state. *New York, Chicago & St. Louis Rd. Co.* v. *Kistler*, 66 Ohio St., 326, 64 N. E., 130. An exception to this rule, however, is enforced when there is a joint enterprise in which the parties are engaged. *Bloom* v. *Leech, Admr.*, 120 Ohio St., 239, 166 N. E., 137. Where the parties stand in the admitted relation of principal and agent, as in the case of *Skinner* v. *Pennsylvania Rd. Co.*, 127 Ohio St., 69, at page 70, 186 N. E., 722, the negligence of the agent is imputed to the principal.

In the *Bloom* v. *Leech case, supra*, the court, at page 244, quoted with approval the following statement of the definition of joint enterprise:

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management.' "

And then, at page 248, the court quoted the following statement with respect to imputed negligence as between members of a joint enterprise:

" '* * * It does not necessarily follow, however, that that rule should be applied when the action is by one member of the joint enterprise as against the other. When the action is against a third person each member of the joint enterprise is a representative of the other, and the acts of one are the acts of all if they be within the scope of the enterprise. When the action is brought by one member of the enterprise against another, there is no place to apply the doctrine of imputed negligence.' " See also: *Morrow* v. *Hume, Admx.*, 131 Ohio St., 319, at page 327, 3 N. E. (2d), 39.

As we said above, there is no evidence which shows that Wilson was the agent of Henline.

The trial court did not err in refusing a charge on the subject of imputed negligence. That court gave a complete instruction to the jury upon the subject of contributory negligence, and, under the facts, was not required to include an instruction with reference to imputed negligence.

We therefore determine herein that Henline was a passenger in his automobile and not a "guest," under Section 4515.02, Revised Code, and that the trial court was not required to instruct the jury on the doctrines of assumption of risk or imputed negligence.

We have examined all the assignments of error and find none prejudicial to the substantial rights of the appellant. The judgment must therefore be affirmed.

*Judgment affirmed.*

Doyle, P. J., and Stevens, J., concur.