WALTON *v.* TULL.

5-2533

356 S. W. 2d 20

Opinion delivered March 26, 1962.

[Rehearing denied April 30, 1962.]

*Cockrill, Laser & McGehee* for Richard A. Walton; *Wright, Lindsey, Jennings, Lester & Shults* for Luther S. Tull; *Parker Parker* for Herman Glenn.

*Terral & Rawlings* and *Gail O. Matthews* for D. A. Brigham.

GEORGE ROSE SMITH, J. This is a tort case arising out of two successive traffic collisions, involving three cars. In the trial court there were various cross actions between the parties. Here there are appeals by two of the defendants and a cross appeal by the plaintiff. It will be simplest to identify the parties as we relate the facts.

On October 3, 1959, Luther S. Tull and his wife, Richard A. Walton and his wife, and a third couple

were returning to Little Rock after having driven to a football game at Fayetteville. They were riding in a station wagon that was in effect being furnished by Tull, as the vehicle belonged to a company of which he was the president and a substantial stockholder. At Clarksville the group stopped so that Tull could attend a night game there. When the others picked up Tull after the game Walton was driving, and he remained at the wheel thereafter. Tull rode in the right front seat.

A few miles south of Russellville Walton overtook and started to pass a car being driven by D. A. Brigham. Just then Brigham started to turn left off the highway, and the two cars, traveling at moderate speeds, had a minor side-to-side collision, with no personal injuries. Brigham testified that he signaled his intention to turn left, but there is other testimony that no signal was given. On this phase of the case the jury attributed 66 per cent of the negligence to Walton and 34 per cent to Brigham. There is no appeal from this part of the judgment, which has been satisfied.

After the first collision the two cars came to a stop on the lefthand shoulder of the highway, facing in their original direction of travel. Brigham's car, in front, was completely off the pavement. The Tull station wagon was at a slight angle, with the front wheels off the pavement and the right rear wheel encroaching on the pavement a foot or two. Both cars had their lights on, it being almost eleven p. m.

From this point we disregard conflicts in the proof and state the facts in the light most favorable to the verdict. About ten seconds after the station wagon came to a stop Tull, who was in the right front seat, opened the door on his side and started to get out. As he extended his left leg toward the pavement the open door was struck by a car traveling in the direction opposite to that of the other two vehicles. This third car was being driven by Herman Glenn, who was so drunk that he mistakenly thought it was raining and did not fully realize that he had struck another car. Tull was painfully and seriously injured.

The plaintiff Tull brought suit against all three drivers, Walton, Brigham, and Glenn. The jury fixed Tull's damages at $27,500 and assigned 60 per cent of the negligence to Glenn, 20 per cent to Walton, 10 per cent to Brigham, and 10 per cent to Tull. The court credited the award with a $10,000 compromise payment previously agreed upon between Tull and Glenn and entered judgment for the balance against Walton and Glenn. There was a proviso that if either defendant should pay more than his proportionate share of the total judgment he would be entitled to contribution from the other. The court refused to allow Tull to recover any judgment against Brigham, because they were equally at fault.

The defendants Walton and Glenn have separately appealed, and Tull has cross appealed from the court's refusal to permit him to recover from Brigham. The case presents an unusual number of interesting questions in the field of tort law.

I. Although Glenn settled with Tull before the trial he is still pecuniarily interested, owing to his liability to Walton for contribution. Glenn first insists that, despite his intoxication, he was traveling in his proper lane of traffic and was, as a matter of law, free from negligence. We cannot accept this argument. Had Glenn not been almost insensibly drunk he might have realized that a collision had taken place between the other two cars and accordingly have approached the scene with caution. Even if Glenn should not have actually witnessed the mishap he might have understood the warning significance of two lighted vehicles facing in his direction on what was to them the wrong shoulder of the road. Again, had Glenn been in control of his faculties he might have been able to avoid hitting Tull. Questions of this kind are typically issues of fact for a jury. We hold there is substantial evidence to support the jury's conclusion that Glenn's drunken driving was a proximate cause of Tull's injuries.

II. Glenn's second contention is that he is not liable to Walton for contribution, for the reason that there was no service of summons upon Walton's cross complaint against Glenn. This point was not raised below. Glenn participated actively in the trial; his attorney cross-examined Walton. This conduct was a general entry of appearance. *Purnell* v. *Nichol*, 173 Ark. 496, 292 S. W. 686. If Glenn had prevailed the judgment in his favor would have ended the matter. He cannot be allowed to speculate upon the chance of a favorable outcome, without objection, and then demand a second trial when he loses.

III. Walton insists that his negligence in attempting to pass Brigham in disregard of the latter's signal was not a proximate cause of Tull's injuries when he was later struck by a third car. It is argued that the negligence of Glenn and of Tull was a superseding cause that broke the connection between Walton's negligence and Tull's injuries. Walton's counsel endeavor to show how difficult it would have been for Walton to foresee that his attempt to pass the Brigham car would set the stage for the later events that caused Tull to be hurt.

That Walton could not have foreseen the exact manner in which Tull was to be injured is not alone a sufficient reason for relieving Walton of liability. Rest., Torts, § 435. As a direct result of Walton's carelessness Tull was put in a position the jury were entitled to regard as hazardous. The vital question is whether the subsequent conduct of Glenn and Tull became a superseding factor.

This general subject was discussed at some length in *Hill* v. *Wilson*, 216 Ark. 184, 224 S. W. 2d 797. There we approved this statement from § 447 of the Restatement of Torts: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if . . . a reasonable man knowing the situation existing when the act

of the third person was done would not regard it as highly extraordinary that the third person had so acted."

If, as a result of Walton's negligence, the station wagon had come to a stop entirely upon the pavement and had immediately been hit by a third vehicle in its proper lane of traffic it cannot be doubted that a jury would be justified in finding that Walton's negligence was an actionable cause of Tull's injuries. In the actual case Tull was placed in a position of peril in that the station wagon was partly on the pavement. One ordinarily assumes the righthand door to be a safe exit, but here that way out exposed Tull to immediate danger. From the fact situation as a whole the jury might well have concluded that Tull's impulse to open the door and leave the car, in circumstances where he might understandably have been excited or confused, was not "highly extraordinary." Nor was the jury bound to say that it was highly extraordinary that Tull should have been struck by a passing car. Viewing the evidence in its entirety, with all its permissible inferences, we think the court was right in submitting the question of Walton's negligence to the jury.

IV. Walton contends that it was a question of fact whether Tull was a guest at the time he was injured; if so, he could not recover without proof of willful and wanton misconduct on Walton's part. Ark. Stats. 1947, §§ 75-913 et seq. It is accordingly urged that the court erred in taking this issue from the jury and permitting Tull to recover upon proof of simple negligence.

Tull's company owned the station wagon; so, as far as Walton was concerned, it really belonged to Tull. Thus the situation in effect presents the question of to what extent a person may be a guest within his own car.

This problem has provoked a variety of solutions in the jurisdictions where it has arisen. We lay aside those cases turning upon a business relationship, as where the owner takes a ride with a garage mechanic to see if repair work has been done satisfactorily. *Gage* v. *Chapin Motors, Inc.*, 115 Conn. 546, 162 A. 17; *Thomas*

v. *Hughes,* 177 Kan. 347, 279 P. 2d 286, 65 A. L. R. 2d 306. The case at bar involved a purely social relation; so we limit our consideration to cases where the owner has simply permitted someone else to take the wheel upon a social occasion.

The principal case finding an owner to have been a guest in his own car is *Phelps* v. *Benson,* 252 Minn. 301, 90 N. W. 2d 533. There two couples were sharing expenses upon a vacation trip. The court upheld a jury verdict finding that the owner was a guest while the other man was driving. The court was influenced by two considerations: First, the statute in question was to be liberally construed (whereas most guest statutes are considered to be in derogation of the common law and therefore to be strictly construed); and, secondly, the statute was passed to prevent collusion, and that possibility is equally present whether or not the driver happens to own the car. The only other case that we find holding the owner to have been a guest is *Murray* v. *Lang,* Iowa, 106 N. W. 2d 643, where the court seems to have concluded that any one who is not actually a passenger for hire is a guest.

The great majority of cases have reached the conclusion that the owner was not a guest in his own car. The leading case is an early one, *Gledhill* v. *Connecticut Co.,* 121 Conn. 102, 183 A. 379. There the court made no mention of the fact that the statute was intended to prevent collusion and noted only that its purpose was to deny a recovery to a social guest who had accepted another's hospitality. Since the owner was not the recipient of the driver's hospitality the court held that the owner was not a guest. Other cases reaching this result include *Leonard* v. *Helms,* 4th Cir., 269 F. 2d 48; *Wilson* v. *Workman,* D. C. Del., 192 F. Supp. 852; *Ahlgren* v. *Ahlgren,* 152 Calif. App. 723, 313 P. 2d 88; *Henline* v. *Wilson,* 111 Ohio App. 515, 174 N. E. 2d 122; and *Lorch* v. *Eglin,* 369 Pa. 314, 85 A. 2d 841.

We think the soundest approach to be found in any of the cases is that taken in *Naphtali* v. *Lafazan,* 8 App.

Div. 2d 22, 186 N. Y. S. 2d 1010, affirmed 8 N. Y. 2d 1097, 171 N. E. 2d 462. There two couples, the Naphtalis and the Lafazans, took a vacation trip in a car owned by Mr. Naphtali, who "in the main" paid the expenses of the trip. Both the Naphtalis were injured when the car overturned while Mr. Lafazan was driving. The court held that Naphtali was not a guest.

The court pointed out that the guest statutes have a two-fold purpose, "to activate the view that it is unfair for a guest to seek damages from one who has benefited or accommodated him and to furnish an antidote to fraudulent claims against insurance companies conceived by collusive host and guest." Having recognized the dual aim of the statute the court was reluctant to give weight to only one of its purposes, either by saying, as the Minnesota court did, that the owner was a guest as a matter of law or by saying, as the Connecticut court did, that he was not. The court preferred a middle ground, observing that no court has held it to be impossible for an owner to be a guest in his own automobile. This statement is sound. If, for instance, a man should lend his car to a friend for a week, with the borrower paying all the costs of operation, a jury might readily find the owner to have been a guest if he accepted a ride in the car during the week.

In the *Naphtali* case the court reviewed a number of cases and concluded that the effect of the *Gledhill* case and at least two others was to hold that an owner who merely allows another to drive upon a social occasion is presumably not a guest "in the absence of evidence to the contrary." It was noted that in the Minnesota case, *Phelps* v. *Benson, supra,* the couples were sharing expenses, so that each man was regarded as the host while he was driving. It was finally concluded in the *Naphtali* case that there were present no special facts "that would impel a court to hold that the general rule is not applicable, that is, that under ordinary circumstances an owner is not a guest." Naphtali was therefore held not to have been a guest of Lafazan.

We approve the reasoning of the New York court. In the case at hand Walton was driving when Tull was picked up after the game at Clarksville. Tull says that Walton asked him if he wanted Walton to drive, and Tull replied, "O. K." Walton quotes Tull as having said, "If you don't mind I would like for you to drive on." In either case it is a typical instance of a person other than the owner doing part of the driving on a social occasion, for his own pleasure or as an accommodation to the owner. We think some additional facts would have to be shown before a jury would be justified in finding Tull to have been a guest in his own automobile.

On this point Walton also argues that the court erred in ruling that Walton was, as a matter of law, Tull's agent in driving the car. It is insisted that this ruling prevented Walton from developing all the facts bearing upon Tull's status as a guest. We do not intimate that the court's ruling was correct (see, e. g., *Schweidler* v. *Caruso*, 269 Wis. 438, 69 N. W. 2d 611), but Walton has not shown that he was prejudiced. He made no offer to prove any facts that would have indicated Tull to be a guest; so we are not in a position to say that Walton was adversely affected by the ruling. *City of Prescott* v. *Williamson*, 108 Ark. 500, 158 S. W. 770.

V. Before the trial Tull settled his claim against Glenn. Tull agreed that, in return for a payment of $9,000, he would satisfy to the extent of $10,000 any judgment he might recover against any of the tortfeasors and, further, that he would make no effort to collect any additional judgment he might obtain against Glenn. Walton now insists that the trial court should have allowed him to introduce the settlement agreement in evidence. It is argued that the matter would have affected Tull's credibility, since he might be tempted to slant his testimony against Walton and Brigham, whom he had not released.

The court was right in excluding proof of the compromise. In *Gien* v. *Williams*, 215 Ark. 705, 222 S. W.

2d 800, the payment by one joint tortfeasor was considered by the jury, apparently without objection, but we did not hold that procedure to be proper in all cases. The fact of settlement might have had a slight bearing upon Tull's credibility, but this reason for admitting the proof is outweighed by the arguments for its exclusion. The evidence would have informed the jury that one of the defendants had admitted liability and might also have been used as a basis for an argument that Tull had accepted the amount of the settlement as fair compensation for his injuries. The Uniform Contribution Among Tortfeasors Act contemplates that each tortfeasor will be credited with amounts paid by other joint tortfeasors, Ark. Stats., § 34-1004, but the statute is silent about how the matter is to be handled. In their note to this section the Commissioners state that the method of letting the jury apply the prior payment in reduction of their verdict is less satisfactory than the method of letting the court credit the payment upon the final judgment. 9 U. L. A. 242. We think the court below was right in following the latter course.

VI. Finally, Tull's cross appeal raises a perplexing question of first impression in Arkansas. The jury apportioned the total negligence in the ratio of 60 per cent against Glenn, 20 per cent against Walton, 10 per cent against Brigham, and 10 per cent against Tull. The trial court refused to allow Tull to recover from Brigham, because their percentage of fault was equal. On cross appeal Tull argues that the comparison should not be made between the plaintiff and a single defendant; it is contended that the plaintiff should recover if his negligence is less than that of all the defendants combined.

The statute is open to either interpretation. It provides that contributory negligence shall not bar a recovery "where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage." Ark. Stats., § 27-1730.1. If the reference to "any person . . . causing such damage" is taken to mean each

separate person the trial court's ruling was correct. But if the reference to any person is taken to include the plural as well as the singular, which by statute is a permissible interpretation, Ark. Stats., § 1-202, then the ruling was wrong.

The few decisions elsewhere are not helpful. In Georgia it has been the law for more than a century that a plaintiff cannot recover from any tortfeasor whose negligence did not exceed that of the plaintiff. This result was reached by a judicial interpretation of two statutes having no resemblance to our comparative negligence act. *Smith* v. *American Oil Co.*, 77 Ga. App. 463, 49 S. E. 2d 90. In Wisconsin the statute is more nearly like ours, declaring that contributory negligence is not a bar to recovery "if such negligence was not as great as the negligence of the person against whom recovery is sought." Wis. Stats., § 331.045. The court construes this act to mean that the plaintiff cannot recover from any tortfeasor whose negligence does not exceed the plaintiff's, even though the plaintiff's negligence is less than that of all the tortfeasors put together. *Walker* v. *Kroger Gro. & Bakery Co.*, 214 Wis. 519, 252 N. W. 721. Professor Prosser has pointed out that the results reached in the Georgia and Wisconsin cases have not been very satisfactory. Prosser, Comparative Negligence, 51 Mich. L. Rev. 465, 507.

In the only published discussion of this particular question under the Arkansas statute Dan B. Dobbs has taken the position that in the situation now presented the plaintiff ought not to recover. It is his thought, presented without much supporting analysis, that the legislature did not intend for there to be a recovery if, for example, the plaintiff and the two defendants were each found to be guilty of one third of the total negligence. Dobbs, Act 296, Comparative Negligence, 11 Ark. L. Rev. 391.

It seems to us that this result does not give effect to the basic legislative intention and is in fact demon-

strably unjust to the person who is injured by the concurring negligence of several tortfeasors.

Our first comparative negligence statute, usually called the Prosser Act, allowed the plaintiff a proportionate recovery no matter how greatly his negligence exceeded that of the defendant. Act 191 of 1955. In the various studies of that act it was generally agreed that its basic purpose was to achieve complete abstract justice by apportioning the total damages of all the parties in the ratio of their respective degrees of fault. Hence the approved procedure was to distribute the total liability so that each party would bear his fair share, taking both his injuries and his percentage of fault into account. Dobbs, Act 191, Comparative Negligence, 9 Ark. L. Rev. 357, 366 et seq.; Leflar, Comparative Negligence, 10 Ark. L. Rev. 54, 62 et seq.; Panel on Comparative Negligence, 10 Ark. L. Rev. 88, 92 et seq. Under the Prosser Act if all three parties were equally at fault there would still have been a partial recovery by the one or two who had suffered more than a third of the total damages.

We think the basic purpose of the present statute to be essentially the same as that of the Prosser Act; it is still to distribute the total damages among those who caused them. The present act provides, however, that the plaintiff can recover only if his negligence is of less degree than that of any person, firm, or corporation causing his damage. We are not convinced that the legislature meant to go any farther than to deny a recovery to a plaintiff whose own negligence was at least 50 per cent of the cause of his damage. To refuse redress to an injured person whose negligence was only 10 per cent of the total would be almost a return to the common law doctrine of contributory negligence.

We realize that where some of the tortfeasors are insolvent or unavailable our conclusion may require a single defendant to pay the entire judgment, even though his negligence was comparatively slight. (The Uniform Act leaves open the matter of equitable con-

tribution when not all the tortfeasors are solvent. Commissioners' Note to § 2 of the 1939 Uniform Contribution Among Tortfeasors Act, 9 U. L. A. 235.) But this possibility of disproportionate liability always exists when some of the wrongdoers cannot be made to pay their fair share. At common law if the plaintiff was free from contributory negligence he could recover his entire damages from any defendant whose negligence, however slight, was a concurring proximate cause of his injuries. We cannot adopt a narrow construction of our comparative negligence statute in the vain hope of avoiding inequitable situations due to insolvency. Obviously either the plaintiff or the solvent defendant must suffer, and the loss has traditionally fallen upon the wrongdoer.

We have said that the rule contended for by Brigham in this case is demonstrably unjust. Suppose that a plaintiff fails to stop his car at a through street and is hit by a drunken driver traveling at an excessive speed. If the jury attributes 33 1/3 per cent of the negligence to the plaintiff for having run the stop sign and 66 2/3 per cent to the defendant the plaintiff recovers the greater part of his damages. This is fair.

But now suppose that upon the same facts it develops that a third person had been negligent in lending his car to the drunken driver. The owner of the car becomes a joint tortfeasor. The plaintiff may still be found guilty of 33 1/3 per cent of the total negligence, for his conduct has not been changed. But no matter how the jury apportions the other 66 2/3 per cent the plaintiff's recovery, under Brigham's theory, is reduced. In fact, if the jury should divide the remaining negligence equally between the owner of the car and the drunken driver the plaintiff could recover nothing at all! We should be hard put to explain to a layman why it is that a person hit by a drunken driver can recover if the wrongdoer was driving his own car but cannot recover if some third person had also been at fault in lending the car. The plaintiff's conduct is so plainly

identical in both instances that it is only common sense for it to have the same effect upon his recovery. We accordingly hold that Tull is entitled to judgment against Brigham.

Affirmed on direct appeal and reversed on cross appeal.

HARRIS, C. J., and McFADDIN, J., dissent as to the cross appeal.

CARLETON HARRIS, Chief Justice. I respectfully dissent to the reversal on cross-appeal, because I feel that no recovery should be allowed a plaintiff against a defendant whose negligence is less, or no more, than that of the plaintiff.

I recognize that there is some merit in the position taken by the Majority, but I do not believe that the General Assembly intended for a plaintiff to recover from any defendant whose negligence was no greater than his own. Our statute, in full, provides:

"Contributory negligence shall not bar recovery of damages for any injury, property damages or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage."

The Majority say this statute is open to two interpretations. I do not agree, for I interpret the language clearly to have reference to separate persons. The Act says "any *person, firm* or *corporation* causing such damage," —not "any *persons, firms,* or *corporations* causing such damage." In other words, if the Legislature intended the interpretation given the Act by the Majority, it was only necessary that it use the plural instead of the singular. The language of this statute has the same meaning to me as the language of the Wisconsin Statute, which provides that contributory negligence is not a bar to recovery "if such negligence was not as great as the negligence of the person against whom recovery is sought." As pointed out in the Majority opinion, the

Wisconsin Supreme Court, in the case of *Walker* v. *Kroger Grocery and Bakery Company,* 214 Wis. 519, 252 N. W. 721, 92 A. L. R. 680, construed the Act to mean that a plaintiff cannot recover from any tortfeasor whose negligence did not exceed that of the plaintiff, even though the plaintiff's negligence was less than that of all the tortfeasors combined.[1] I agree thoroughly with the position taken by Mr. Dobbs in his Legislative Note found in 11 Ark. L. Rev. 391, to the effect that the Legislature did not intend a recovery against any defendant whose negligence was not greater than that of the plaintiff. In fact, I have found no case to the contrary. It appears to me that the position taken by the Majority may well work an undue hardship on a defendant who may have had but little to do with injuries sustained by a plaintiff. For example, let us say "A" sues "B" and "C" as joint tortfeasors, and the jury finds defendant "B" guilty of 74% negligence, defendant "C" guilty of 1% negligence, and plaintiff "A" guilty of 25% negligence. "A's" damages are fixed at $40,000. "B" is insolvent. Under the Majority holding, plaintiff "A", *though 24% more negligent than defendant "C", can collect 75% of his damages from "C"* (his own 25% negligence being deducted). This results in "C" having to satisfy "A's" judgment to the extent of $30,000, though his own negligence was at the very minimum. Again, using another illustration, plaintiff "A" sues "B" and "C" as joint tortfeasors. The jury finds defendant "B" guilty of 98% negligence, defendant "C" guilty of 1% negligence, and plaintiff "A" guilty of 1% negligence. "B" is insolvent. Under the holding of the Majority, "A" can collect his entire judgment, less his own 1% of negligence, from "C", *i.e.,* "C" is financially responsible for 99% of the damage suffered by "A", though he was only responsible for 1% of the actual damage.

I cannot believe the Legislature intended such a result. I would affirm on the cross-appeal, and therefore respectfully dissent.

---

[1] The Supreme Court of Georgia has taken the same position, though the Georgia Act is not similar to our own.

Ed. F. McFADDIN, Associate Justice, dissenting.

The jury found the four parties negligent as follows:

| | |
|---|---|
| Glenn | 60 per cent. |
| Walton | 20 per cent. |
| Brigham | 10 per cent. |
| Tull | 10 per cent. |

It is my view that regardless of the *inter sese* relationship between Tull and Walton, nevertheless, as concerns Glenn and Brigham, the negligence of Walton is imputed to Tull.[1] With Walton's negligence imputed to Tull, the above figures become:

| | |
|---|---|
| Glenn | 60 per cent. |
| Tull | 30 per cent. |
| Brigham | 10 per cent. |

We come then to the application of the Comparative Negligence Statute[2] (which is Act 296 of 1957, compiled as §§ 27-1730.1—27-1720.2 Ark. Stats.). When we apply the Comparative Negligence Statute to the last set of figures detailed above, we find that Tull's negligence, being 30 per cent., is greater than Brigham's negligence of 10 per cent.; and it is my view that under the Comparative Negligence Statute Tull cannot recover anything from Brigham. As to Glenn, whose negligence is 60 per cent., Tull has already settled with him out of court for a figure of $9,000.00.

It is my view that the Comparative Negligence Statute, being an Act of 1957, modifies and affects the Uniform Tortfeasors' Contribution Act, which is Act No. 315 of 1941; and in this case results in (1) Brigham being exempt from all liability to Tull; and (2) Glenn being liable for only 30 per cent. of the damages which

---

[1] The Lower Court ruled that Walton was, as a matter of law, the agent of Tull. The Majority Opinion so recites.

[2] Section 2 of the Act provides: "In all actions hereafter accruing for negligence resulting in personal injuries or wrongful death or injury to property, the contributory negligence of the person so injured, damaged, or killed shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

have already been settled. As between Walton and Tull, there would only be 10 per cent. due by Walton to Tull. These results are because I think the Comparative Negligence Statute modifies and affects the Uniform Tortfeasors' Contribution Act.